Not Reported in F.Supp. Page 1

Not Reported in F.Supp., 1992 WL 229849 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

C
Williams v. Carson Pirie Scott
N.D.Ill.,1992.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
Cecil L. WILLIAMS, Plaintiff,
v.
Carson Pirie SCOTT, Defendant.
No. 92 C 5747.

Sept. 9, 1992.

MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

*1 Cecil Williams ("Williams") has tendered a self-prepared Complaint charging Carson Pirie Scott & Co. ("Carson Pirie") with employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. Williams asks (1) for leave to file this action without payment of the filing fee and (2) for appointment of a lawyer to represent him.

Judicial permission to a plaintiff to proceed in forma pauperis depends on a dual showing by that plaintiff of:

1. his or her financial inability to pay the filing fee plus
2. the existence of one or more claims that is or are non-"frivolous" in the legal sense defined by *Neitzke v. Williams,* 490 U.S. 319 (1989) and more recently reconfirmed and refined in *Denton v. Hernandez,* 112 S.Ct. 1728, 1733-34 (1992).

Williams' Application To Proceed in Forma Pauperis adequately documents that he satisfies the first of those requirements. This opinion therefore turns to the second.

Williams' statement of the facts and of his theory of race discrimination is straightforward. Instead of this Court engaging in an attempted paraphrase of his allegations (which could create the potential for mischaracterizing what Williams claims), what follows is a direct copy of Williams' charge as filed simultaneously with the Illinois Department of Human Resources and EEOC, a charge that has been incorporated by reference into his Complaint:

I. On January 5, 1989, I was discharged from my position of Collector. On January 3, 1989, I was suspended. I was hired on January 3, 1989.

II. The reasons for my discharge given by Laura Reese (white), Human Resources, were that " If I had known you were an ex-felon, I never would have hired you," and because I failed to complete the application. The same reason of my being an ex-felon was the reason Reese gave for my suspension.

III. I believe that I have been discriminated against on the basis of my race, black, in that:

A. I began work on January 3, 1989. At this time I informed Reese that I had an arrest and conviction record. Reese told me I would probably be discharged but I should work the rest of the day, but not report back until she called me.

B. On January 5, 1989, Reese called me and told me I was discharged because of the arrest and conviction record and because of the fact that I failed to put this information on my application. I did leave the question regarding arrest blank, because I felt a truthful answer would eliminate me from consideration; but I also left two other questions blank, but I was not discharged for these.

C. Respondent has discriminated against me on the basis of my race, black, because minorities are arrested at a higher rate than non-minorities, thus any policy based upon arrests would have a disparate impact upon minorities and result in a violation of the Illinois Human Rights Act, Section 1-102.

Although Williams' charge speaks of a policy based on "arrests" rather than on felony convictions (while the latter factor was the reason that Carson

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Case 1:07-cv-06672    Document 12-2    Filed 01/16/2008    Page 2 of 20

Not Reported in F.Supp.                                                    Page 2
Not Reported in F.Supp., 1992 WL 229849 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

Pirie actually gave for its adverse employment decision), it will be assumed for purposes of this decision that a larger percentage of blacks than non-blacks also have felony records.[FN1] But both intuitively and as a matter of law it is obvious that an employment policy that bars the hiring of ex-felons-at least for a job as "collector," the position for which Williams applied and was originally hired-does not violate Title VII.

*2 *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642 (1989) provides the definitive statement from the Supreme Court as to the disparate-impact theory of employment discrimination-the application of a facially neutral employment practice (refusal to hire felons is an excellent example of such a practice) that has a disproportionate effect in terms of the race of those hired. Unlike the requirement of proof in " disparate treatment" cases, the disparate-impact plaintiff need not produce evidence of the employer's *subjective* intent to discriminate (*id.* at 645-46).

But even in the course of setting out that theory, the opinion in *Wards Cove* demonstrates why Williams must fail in this case. For current purposes, one added assumption will be made in Williams' favor to pose the problem that he faces here. Even though he has not spoken directly to the relevant factor of the effect that Carson Pirie's policy against hiring felons has had on the *actual* makeup of its work force,[FN2] this opinion will assume, under the principles of generous reading taught by *Neitzke, Denton, Haines v. Kerner,* 404 U.S. 519, 520-21 (1972) (per curiam) and *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984), that there *is* in fact a "significantly disparate impact" on the work force directly traceable to the challenged policy.

But all that assumption does is to shift the focus of inquiry "to any business justification [employers] offer for their use of these practices"(*id.* at 658). As the Supreme Court goes on to say in *Wards Cove,* 490 U.S. at 659 (citations omitted, emphasis in original):

Though we have phrased the query differently in different cases, it is generally well established that at the justification stage of such a disparate-impact case, the dispositive issue is whether a challenged practice serves, in a significant way, the legitimate employment goals of the employer. The touchstone of this inquiry is a reasoned review of the employer's justification for his use of the challenged practice. A mere insubstantial justification in this regard will not suffice, because such a low standard of review would permit discrimination to be practiced through the use of spurious, seemingly neutral employment practices. At the same time, though, there is no requirement that the challenged practice be " essential" or "indispensable" to the employer's business for it to pass muster: this degree of scrutiny would be almost impossible for most employers to meet, and would result in a host of evils we have identified above.

In this phase, the employer carries the burden of producing evidence of a business justification for his employment practice. The burden of persuasion, however, remains with the disparate-impact plaintiff.... "[T]he ultimate burden of proving that discrimination against a protected group has been caused by a specific employment practice remains with the plaintiff *at all times.*"

It really requires nothing more than the statement of Carson Pirie's policy to explain its business justification. And it is not this Court's function-because it is not the function of Title VII-to decide (for example) whether this Court would adopt the same policy on its own.[FN3] What is plain is that as a matter of law the Carson Pirie policy *cannot* be labeled as "insubstantial"-it can certainly be viewed rationally by Carson Pirie as serving a legitimate business purpose of minimizing the perceived risk of employee dishonesty.

*3 It is of course true that *Wards Cove* rested in part on the fact that Title VII placed the burden of persuasion as to discrimination on the plaintiff-that the plaintiff "must prove that it was 'because of such individual's race, color,' etc., that he was denied a desired employment opportunity"(490 U.S. at 660). And it is also true that the Civil Rights Act of 1991 has shifted the burden of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-06672  Document 12-2  Filed 01/16/2008  Page 3 of 20

Not Reported in F.Supp.                                                              Page 3
Not Reported in F.Supp., 1992 WL 229849 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

persuasion in disparate impact cases-that 42 U.S.C. § 2000e-2(k)(1)(A)(i) now says it is the employer who must "demonstrate that the challenged practice is job related for the position in question and consistent with business necessity." But two factors make that change in law irrelevant to this case:

 1. Decisions from our Court of Appeals dealing with what has been called "retroactivity" under the 1991 Act contain what are at least strong signals that employer *conduct* that preceded the statutory amendment will continue to be controlled by pre-amendment law, even if sued on afterwards (see, e.g., *Mozee v. American Commercial Marine Service Co.,* 963 F.2d 929 (7th Cir.1992) and *Luddington v. Indiana Bell Telephone Co.,* 966 F.2d 225 (7th Cir.1992)).

 2. Even if it were to be assumed that the 1991 Act *did* apply, the question of placement of the burden of persuasion does not at all affect the situation here, where there is no basis whatever for drawing a rational inference that the absence of a felony record is *not* "job related for the position in question and consistent with business necessity."

Accordingly Williams' claim does not survive the threshold scrutiny described at the outset of this opinion. Leave to file in forma pauperis is denied, and this action is dismissed without prejudice (see *Denton,* 112 S.Ct. at 1734).$^{FN4}$ In addition Williams is informed:

 1. If he wishes to appeal this order of dismissal, within 30 days after the entry of judgment he must file a Notice of Appeal to the United States Court of Appeals for the Seventh Circuit (see Fed.R.App.P. 4(a)). That Notice of Appeal must be filed with the Clerk of the Court of the United States District Court, 219 South Dearborn Street, 20th Floor, Chicago, Illinois 60604.

 2. Although this Court of course expresses no substantive views on this subject, Williams should also be aware that if the Court of Appeals were to determine that such an appeal were "frivolous" in the legal sense, that could result in the imposition of sanctions by that Court (see Fed.R.App.P. 38).

FN1. Needless to say, no invidious comparison is intended by that assumption-or by this Court. Of course it is not *because* people are black that the crime statistics are what they are. Every thoughtful student of our society rather correlates the incidence of crime with the incidence of poverty-and one of the aspects of United States life about which we must individually and collectively be most troubled (and must have a great national sense of guilt) is the enormous disparity that exists between blacks and non-blacks in terms of their respective percentages of people below the poverty level.

FN2. *Wards Cove, id.* at 657 says (emphasis in original):

[A] Title VII plaintiff does not make out a case of disparate impact simply by showing that, "at the bottom line," there is racial *imbalance* in the work force. As a general matter, a plaintiff must demonstrate that it is the application of a specific or particular employment practice that has created the disparate impact under attack. Such a showing is an integral part of the plaintiff's prima facie case in a disparate-impact suit under Title VII.

It then goes on to state the plaintiff's burden of " specifically showing that each challenged practice has a significantly disparate impact on employment opportunities for whites and non-whites"(*id.*). For that reason *Wards Cove, id.* at 658 directs lower courts "to require, as part of [a plaintiff's] prima facie case, a demonstration that specific elements of the [employer's] hiring process have a significantly disparate impact on non-whites."

FN3. Williams attaches to his Complaint a copy of a letter that he wrote to the Safer Foundation after receiving his right-to-sue letter from EEOC, in which he says in part:

It becomes increasingly obvious that due to the discriminatory hiring practices of Carson Pirie Scott and other companies that behave in a like manner, ex-felons are being relegated to a permanent underclass status. It is my further understanding that 'Safer' is a foundation that espouses commitment to the rehabilitation and employment

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-06672   Document 12-2   Filed 01/16/2008   Page 4 of 20

Not Reported in F.Supp.                                              Page 4
Not Reported in F.Supp., 1992 WL 229849 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

placement of ex-felons. I believe that ex-offenders, having paid their debt to society, deserve every change to return to the community as contributors.

Moreso [sic], this lawsuit clearly illustrates the dire need and challenge for society and the business community to reintegrate ex-felons into the mainstream of America life. We can best accomplish this goal by establishing a legal economic foundation through gainful employment.

This Court has long shared the view that one major tool in the effort to reduce recidivism is the provision of employment opportunities for the ex-offender seeking to return to society. For that reason this Court frequently seeks to draw on the resources of the Safer Foundation (one of the few organizations committed to such efforts) on behalf of those whom this Court must sentence in criminal cases. But neither Title VII nor any other provision of positive law authorizes this Court to impose its own notions of sound policy on employers on pain of their being subjected to liability in case of their noncompliance with such notions.

> FN4. By definition such a dismissal moots Williams' motion for the appointment of counsel.

N.D.Ill.,1992.
Williams v. Carson Pirie Scott
Not Reported in F.Supp., 1992 WL 229849 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                           Page 1

Slip Copy, 2003 WL 25676461 (N.D.Ohio)
**(Cite as: Slip Copy)**

**H**
**Honeysett v. Williams**
N.D.Ohio,2003.
Only the Westlaw citation is currently available.
United States District Court,N.D. Ohio,Western Division.
Kevin **HONEYSETT**, et al., Plaintiff,
v.
Robert G. **WILLIAMS**, et al., Defendant.
**No. 3:02 CV 7247.**

July 3, 2003.

Named Expert: Robert B. Ancell, Dr. Anthony Gamboa, Jr.

Daniel C. Brown, Daniel C. Sturm, Chambers, Stein & Sturm P.L.C., Kalamazoo, MI, Jack G. Fynes, Shumaker, Loop & Kendrick, Toledo, OH, for Plaintiffs.
Hugh J. Bode, Reminger & Reminger, Jonathan M. Menuez, Lawrence A. Sutter, Sutter O'Connell & Farchione, Cleveland, OH, Michael P. Murphy, Reminger & Reminger, Sandusky, OH, for Defendants.

*MEMORANDUM OPINION AND ORDER*

KATZ, J.
*1 This matter is before the Court on Defendants' motion in limine to preclude any evidence regarding the destruction of Defendant Robert Williams' log books (Doc. No. 51); Defendants' motion in limine to exclude any evidence regarding Defendant Robert Williams' records from the Professional Drivers Academy (Doc. No. 52); Defendants' motion in limine to preclude any information acquired by Plaintiffs from a conversation with Edward Bremme (Doc. No. 53); Defendants' motion in limine to preclude any evidence that Defendant Robert Williams refused to give a statement to police before consulting with his attorney (Doc. No. 54); Defendants' motion in limine to preclude any conclusions by Trooper Choya Hawn regarding blame or fault (Doc. No. 55); and Defendants' motion in limine to preclude testimony by Plaintiffs' experts Robert B. Ancell and Dr. Anthony Gamboa, Jr. (Doc. No. 57), as to which Plaintiffs have filed responses (Docs. Nos. 66, 67, 68, 69, 70 & 71). Plaintiffs have also a filed a motion in limine regarding collateral benefits, including worker's compensation benefits (Doc. No. 72), as to which Defendants have not filed a response.

The Court has jurisdiction to decide this matter under 28 U.S.C. § 1332. For the reasons stated below, Defendants' motions in limine, Docs. Nos. 51, 54, & 55 will be granted; Doc. No. 52 will be granted in part and denied as moot in part; the Court will reserve ruling on motion in limine Doc. No. 53 until trial; and Doc. No. 57 will be denied. Plaintiffs' motion in limine will be granted.

*DISCUSSION*

*A. MOTION IN LIMINE*

Motions in limine are generally used to ensure evenhanded and expeditious management of trials by eliminating evidence that is clearly inadmissible for any purpose. *See Jonasson v. Lutheran Child and Family Serv.,* 115 F.3d 436, 440 (7th Cir.1997) . The court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds. *Cf. Luce v. United States,* 469 U.S. 38, 41 n. 4, 105 S.Ct. 460, 463 n. 4, 83 L .Ed.2d 443 (1984) (federal district courts have authority to make in limine rulings pursuant to their authority to manage trials). Unless evidence meets this high standard, evidentiary rulings should be

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context. (citations omitted). Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded. The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine. *See United States v. Connelly,* 874 F.2d 412, 416 (7th Cir.1989) (citing *Luce,* 469 U.S. at 41, 105 S.Ct. at 463) ("Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling.").*Hawthorne Partners v. AT & T Technologies, Inc .,* 831 F.Supp. 1398, 1400-1401 (N.D.Ill.1993).

*2 Evidence is relevant when it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence. FED.R.EVID. 401. Generally, "[a]ll relevant evidence is admissible,"Fed.R.Evid. 402, unless "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED.R.EVID. 403.

B. DEFENDANTS' MOTIONS IN LIMINE

1. Motion to preclude any evidence regarding destruction of Defendant Robert Williams' log books

Defendants move the Court to preclude Plaintiffs from offering any evidence referring to the destruction of Defendant Robert Williams' (" Williams") log books. 49 C.F.R. § 395.8(k)(1) provides that "[e]ach motor carrier shall maintain the records of duty status and all supporting documents for each driver it employs for a period of six months from the date of receipt."Defendants contend that Plaintiffs failed to request the log books during the six (6) month period that they were required to be retained.

Plaintiffs respond that the applicable federal regulations did not require the log books to be destroyed. Moreover, Plaintiffs assert that such destruction occurred only after Defendants became aware that Plaintiffs were represented by counsel, which was well within the first six (6) months of the accident. Plaintiffs contend that the jury should be permitted to infer that there would have been relevant information in the log books that Defendants chose to destroy even though litigation was pending.[FN1]Admittedly, this is a close call. Defendants, however, were in compliance with applicable federal regulations, and Plaintiffs do not dispute Defendants' contention that they failed to request production of the log books in the six (6) months following the incident. Thus, Defendants' motion to preclude Plaintiffs from offering any evidence referring to the destruction of Williams' log books is granted. [FN2]

> FN1. Plaintiffs note that it was during this same period that Defendants destroyed the tractor-trailer Williams was driving even though Plaintiffs' counsel had requested an opportunity to inspect it. (Doc. No. 66, Ex. 1).

> FN2. The Court need not consider Defendants' alternative position that any evidence of the destruction of Williams' log books should be precluded pursuant to Fed.R.Evid. 403.

2. Motion to exclude any evidence regarding Defendant Robert Williams' records from the Professional Drivers Academy

Defendants move the Court to exclude any evidence regarding Williams' record from the Professional Drivers Academy, asserting that it is inadmissible character evidence to prove Plaintiff's negligence against Williams pursuant to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Fed.R.Evid. 404(b). Fed.R.Evid. 404(b) states in pertinent part:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident ...

Plaintiffs assert that they do not intend to offer Williams' records from the Professional Drivers Academy in support of their negligence claim against him. Thus, in this regard Defendants' motion is denied as moot.

*3 Plaintiffs, however, maintain that these records will be offered in support of their negligent hiring claim. In opposition, Defendants argue that M.S. Carriers did not have Williams' driving records at the time he was hired, and thus they should be precluded as irrelevant under Fed.R.Evid. 401 and 402. Defendants direct the Court to *State v. Lloyd,* No.2001-CO-36, 2002 Ohio App. LEXIS 3027, (Ohio Ct.App. 7th Dist. June 13, 2002). In *Lloyd,* the defendant had been convicted of a traffic violation. Though the *Lloyd* court reversed the defendant's conviction, it also found that the defendant was not prejudiced by the trial court's decision not to require the State to prepare an overview and description of the curriculum of the education and training officers receive in the use of laser speed detection devices. *Id.* at * *6. The defendant's knowledge that the officer was certified was sufficient. *Id.* at * *7.

Similarly, Defendants assert that Williams' grades and reviews are irrelevant as the decision to hire him was premised on his having a commercial driver's license and having been certified by a professional training school. This argument is not well-taken. Since *Lloyd* does not involve a negligent hiring claim, it has negligible, if any applicability. In *Hart v. Paint Valley Local Sch. Dist.,* No.C2-01-004, 2002 U.S. Dist. LEXIS 25720, at *43-44 (S.D.Ohio Nov. 15, 2002), the court stated:

In *Stephens v. A-Able Rents Co.,* 101 Ohio App.3d 20, 654 N.E .2d 1315 (1995), the Ohio Court of Appeals adopted the formulation of *Byrd* as the standard for negligent hiring in all cases, stating, 'the primary issue in a negligent hiring case is whether the employer knew or should have known of the of employee's criminal or tortious propensities'.

A "plaintiff must plead facts which indicate that the individual hired had a past history of criminal, tortious, or otherwise dangerous conduct about which [the employer] knew or could have discovered through reasonable investigation.*Byrd v. Faber,* 565 N.E.2d 584, 590 (Ohio 1991). In other words, "[t]he employer's negligence is based on foreseeability."*Zimmer v. Ashland Univ.,* No. 1:00CV0630, 2001 U.S. Dist. LEXIS 15075, at * 37 (N.D.Ohio Sept. 5, 2001). Together with Williams' driving record, alleged misrepresentations of his employment history and Defendants' own evaluation, Plaintiffs maintain these records will demonstrate that M.S. Carriers, Inc. failed to conduct a reasonable investigation of Williams before hiring him. This evidence is clearly relevant to Plaintiffs' negligent hiring claim. To this extent, Defendants' motion to exclude any evidence regarding Williams' records from the Professional Drivers Academy is denied. Any limiting instruction to assist the jury in the proper use of this evidence testimony can be given at the time of the testimony and/or in the Court's final instructions.

3. Motion to preclude any information acquired by Plaintiffs from a conversation with Edward Bremme

*4 Defendants move the Court to preclude any offer or reference to evidence learned regarding Williams' employment history acquired during a phone conversation between Plaintiffs and Edward Bremme of Big Red Construction. Defendants contend that such information is hearsay that must be excluded pursuant to Fed.R.Civ.P. 801 and 802. Plaintiffs acknowledge that the purpose of the conversation was to examine Williams' background, but contend that the conversation was between Gene Breeden, their trucking expert, and Edward Bremme. Though the information is hearsay, Plaintiffs maintain that Mr. Breeden may testify to what he learned as part of that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

conversation.Fed.R.Civ.P. 703 provides:
The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

While the conversation between Mr. Breeden and Mr. Bremme constitutes hearsay, neither party argues that Mr. Breeden cannot rely on the contents of the conversation in forming his opinion. The Court, however, is not in a position at this time to assess whether the specific contents should be disclosed to the jury. Thus, the Court will reserve ruling on this motion until trial.[FN3]

> FN3. Plaintiffs' also assert that a written response from Mr. Bremme due to a subpoena (Doc. No. 71, Exs. 1 & 2) is admissible in support of Plaintiffs' negligent hiring claim and/or to impeach Williams' testimony regarding his work history. The Court will also reserve ruling on the admissibility Mr. Bremme's written response until trial.

4. Motion to preclude any evidence that Defendant Robert Williams refused to give a statement to police before consulting with his attorney

Defendants move the Court to preclude any evidence that Williams refused to give a statement to police before consulting with his attorney as irrelevant under Fed.R.Evid. 401 and 402. Defendants argue that Williams was simply invoking his Fifth Amendment right against self-incrimination, believing that any statement might be used against him in a future criminal prosecution. Defendants direct the Court to *Lefkowitz v. Turley*, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973). In *Lefkowitz*, the Supreme Court stated:
The Fifth Amendment provides that no person " shall be compelled in any criminal case to be a witness against himself."The Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.

*Id.* at 77.

Moreover, the Supreme Court has also asserted:
If he asserts the privilege, he "may not be required to answer a question if there is some rational basis for believing that it will incriminate him, at least without at that time being assured that neither it nor its fruits may be used against him" in a subsequent criminal proceeding.

*5 *Minnesota v. Murphy*, 465 U.S. 420, 429 104 S.Ct. 1136, 42 L.Ed .2d 409 (1984) (quoting *Maness v. Meyers*, 419 U.S. 449, 473, 95 S .Ct. 584, 42 L.Ed.2d 574 (1975)).

Further, in *United States v. Myers*, 123 F.3d 350, 359 (6th Cir.1997), the court stated: "Indeed, ' the privilege against self-incrimination can be asserted 'in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory.' " (quoting *Maness*, 419 U.S. at 464). In contrast, Plaintiffs assert that Defendants are confusing the issue of "whether" Williams spoke to the police with "when" he spoke to the police.

Granted, the first time Williams provided a statement to police was at his attorney's office on July 31, 2001, three days following the incident. (Doc. No. 75, Hawn Dep., pp. 54-55). Trooper Choya Hawn ("Trooper Hawn"), the investigating officer who took Williams' statement, however, testified:
Q. Okay. How did this meeting come about here at the [Reminger & Reminger] office?

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A. I don't specifically recall. I know that I was trying to get in touch with Mr. Williams. And when he was released from the hospital, I don't know if he had already had contact with his company, who referred him to this firm, or whether he had already had contact with this firm. *But at this point I think there was still a question about whether this could be a fatal crash. And because of the possibility of serious or fatal injury, that they wanted him to be represented.*

Id. at 56.[FN4]

> FN4. Hawn explained that as the investigating officer he would be the individual "responsible for presenting the case if there [were] any criminal action."*Id.* at 6.

At that time, Williams' potential criminal liability remained an open question. Moreover, the Court is also persuaded that any probative value would be substantially outweighed by the danger of unfair prejudice. While his attorney was present, Williams answered all of the questions he was asked.*Id.* at 59.Accordingly, Defendants' motion to preclude any evidence that Williams refused to give a statement to police before consulting with his attorney is granted.

5. Motions to Preclude Expert Testimony by Trooper Hawn, and Drs. Robert B. Ancell and Anthony Gamboa, Jr.

a. *Daubert* Standard

The legal standard to be used in *Daubert* challenges to the admissibility of expert testimony was set forth by Judge Bechtle in his memorandum opinion issued on February 1, 2001:

Federal Rule of Evidence 702 obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable. *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147 (1999) (quoting *Daubert,* 509 U.S. at 589). The party offering the expert has the burden of proving admissibility. *Daubert,* 509 U.S. at 592 n. 10. The subject of an expert's testimony must be grounded in the methods and procedures of science and based on more than subjective belief or speculation. *Id.* at 589-590.Further, Rule 702 requires that expert testimony assist the trier of fact, i.e., it must "fit" the issues in the case by having a "valid scientific connection to the pertinent inquiry."*Id.* at 591-92.

*6 In determining "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact," the court must assess whether the methodology underlying the testimony is scientifically valid and whether it can properly be applied to the facts in issue. *Id.* at 592-93.Furthermore, the court must examine the expert's conclusions in order to determine whether they can reliably follow from the facts known to the expert and the methodology used. *Heller v. Shaw Indus., Inc.,* 167 F.3d 146, 153 (3d Cir.1999).

In *Daubert,* the Court identified several factors to assist courts in evaluating whether a scientific theory or methodology constitutes reliable scientific knowledge. These include: whether the theory or technique can be or has been tested; whether the theory has been subjected to peer review and publication; whether a technique has a known or potential rate of error and whether there are standards controlling the technique's operation; and whether the theory or method has general acceptance in the scientific community.*Daubert,* 509 U.S. at 593-94. These factors "are simply useful signposts, not dispositive hurdles that a party must overcome in order to have expert testimony admitted."*Heller,* 167 F.3d at 152.

In addition, a court should "exclude proffered expert testimony if the subject of the testimony lies outside the witness's area of expertise." 4 Weinstein's Fed. Evid. § 702.06[1], at 702-52 (2000). In other words, a party cannot qualify as an expert generally by showing that the expert has specialized knowledge or training which would qualify him or her to opine on some other issue. *Redman v. John D. Brush & Co.,* 111 F.3d 1174, 1179 (4th Cir.1997); *Barrett v. Atl. Richfield Co.,* 95 F.3d 375, 382b (5th Cir.1996).

Moreover, testimony of an expert that constitutes mere personal belief as to the weight of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the evidence invades the province of the jury. *McGowan v. Cooper Indus., Inc.,* 863 F.2d 1266, 1273 (6th Cir.1987); *STX, Inc. v. Brine, Inc.,* 37 F.Supp.2d 740, 768 (D.Md.1999) (quotation omitted), *aff'd,*No. 99-1540, 2000 WL 564010 (Fed.Cir. May 8, 2000); *Sec. & Exch. Comm'n v. Lipson,* 46 F.Supp.2d 758, 763 (N.D.Ill.1998).

Lastly, the court "should also be mindful of other applicable rules."*Daubert,* 509 U.S. at 595. Federal Rule of Evidence 703"provides that expert opinions based on otherwise inadmissible hearsay are to be admitted only if the facts and data are 'of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.' " *Id.* (quoting Fed.R.Evid. 703). Under Rule 703, "[i]f the underlying data are so lacking in probative force and reliability that no reasonable expert could base an opinion on them, an opinion which rests entirely upon them must be excluded." *In re Paoli RR. Yard PCB Litig.,* 35 F.3d [717,] 748 (quoting *In re "Agent Orange" Prod. Liab. Litig.,* 611 F.Supp. 1223, 1245 (E.D.N.Y.1985).

*7 *In re: "Diet Drugs (Phenermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.,* No. MDL 1203, 2001 WL 454586, at *5-6 (E.D.Pa. Feb. 1, 2001) (footnotes omitted). The district court is not required to hold a hearing to address a *Daubert* issue. *See Greenwell v. Boatwright,* 184 F.3d 492, 498 (6th Cir.1999).

b. Trooper Hawn

Defendants move the Court to preclude any testimony by Trooper Hawn regarding blame or fault pursuant to Fed.R.Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals Inc.,* 509 U.S. 579 (1993). Defendants cite *Scott v. Yates,* 643 N.E.2d 105 (Ohio 1994) in support of their motion. In *Yates,* the Supreme Court of Ohio held that the trial court erred in permitting the investigating officer of a traffic accident to provide an opinion on causation because he did not possess the requisite skills or expertise. *Id.* at 107.In so doing, the *Yates* court noted that the investigating officer had only received two-weeks training on accident investigation, and had neither worked with an accident reconstructionist nor conducted an accident reconstruction himself. *Id.* The *Yates* court also noted that the officer testified "that there is a difference between investigating an accident, and reconstructing one."*Id.*

Likewise, Defendants argue that Trooper Hawn is not an expert in accident reconstruction, and only received two-weeks training in accident reconstruction. (Doc. No. 75, Hawn Dep. p. 6).[FN5] Moreover, Defendants point out that he did not witness the incident. The Court need not decide whether Trooper Hawn is a qualified accident reconstructionist. His own testimony establishes that he did not conduct an accident reconstruction. While asserting that he has "technical and reconstruction training," Trooper Hawn acknowledged that "[t]here was no [accident] reconstruction done on this crash."(Doc. No. 75, Hawn Dep., p. 44). To the extent admissible, Trooper Hawn may testify as to his observations, along with data and other information gathered. Thus, Defendants' motion to preclude any conclusions by Trooper Hawn as to blame or fault in the case *sub judice* is granted.[FN6]

> FN5. Trooper Hawn has also participated in a two-week training course on technical accident investigation. *Id.* at 5.
>
> FN6. Plaintiffs' assert that Defendants motion should not be granted as Plaintiffs expect Defendants to seek expert testimony from Trooper Hawn about the propriety of Williams using the emergency pull-off area even though he is not an expert in the field of trucking. The Court will not linger on this argument other than to note that these are distinct issues.

c. Drs. Ancell and Gamboa

Defendants move the Court to preclude the testimony of Plaintiffs' experts, Drs. Ancell and Gamboa, pursuant to Fed.R.Evid. 702 and *Daubert v. Merrel Dow Pharmaceuticals Inc.,* 509 U.S. 579

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(1993). Dr. Ancell is a vocational rehabilitation specialist who will testify as to Mr. Honeysett's future employment opportunities based on the assessment of Mr. Honeysett's treating physician Dr. Nabil Ebraheim. Likewise, Dr. Gamoba is a vocational economist who will testify as to Mr. Honeysett's financial losses in terms of wages and fringe benefits.

Defendants contend that opinions of Drs. Ancell and Gamboa do not fit the facts of the case *sub judice* because they are based upon Dr. Ebraheim's original assessment that Mr. Honeysett would be restricted to sedentary work for (2) two to (3) three hours per day. At his deposition, held on May 1, 2003, Dr. Ebraheim modified his original assessment and testified that Mr. Honeysett could perform light duty work (4) four to (6) six hours per day. (Doc. No. 57, Ex. D). This argument is not well-taken.

*8 While acknowledging that Dr. Ebraheim changed his original assessment, Plaintiffs immediately informed Dr. Ancell and received a modified opinion on May 12, 2003, which Plaintiffs forwarded to Defendants on May 20, 2003. (Doc. No. 69, Exs. 1 & 2). Plaintiffs also forwarded Dr. Ancell's modified opinion to Dr. Gamboa, who on May 27, 2003, responded that his opinions remained the same. The opinions to which Drs. Ancell and Gamboa will testify fit the facts of the case, and Defendants were made aware of any changes in a timely manner as trial in this matter is set for July 8, 2003. Thus, Defendants' motion to preclude the testimony of Drs. Ancell and Gamboa is denied.

*C. PLAINTIFFS' MOTION IN LIMINE*

Plaintiffs move the Court to preclude Defendants from offering any evidence regarding collateral benefits, including payment/reimbursement of Mr. Honeysett's medical expenses, lost wages or benefits, or the receipt of worker's compensation benefits pursuant to the collateral source rule. Under the collateral source rule, "the receipt of collateral benefits is deemed irrelevant and immaterial on the issue of damages, it follows, as a necessary concomitant, that not only are the benefits not to be deducted but that the receipt of such benefits is not to be admitted in evidence, or otherwise disclosed to the jury."*Pryor v. Webber,* 263 N.E.2d 235, 239 (Ohio 1970). The collateral source rule includes worker's compensation benefits, medical expenses, payment of back wages, insurance proceeds, social security and medicare payments and gratuitous physician's fees. *Id.* at 108-09;*Allison v. Daniels,* No. 01 CA 86, 2002 Ohio App. 5089, at *14-15 (Ohio Ct.App. Sept. 20, 2002). Thus, Plaintiffs' motion to preclude Defendants from offering any evidence regarding collateral benefits including payment/reimbursement of Mr. Honeysett's medical expenses, lost wages or benefits, or the receipt of workers compensation benefits is granted.

*CONCLUSION*

For the reasons stated above, Defendants' motion in limine to preclude any evidence regarding the destruction of Defendant Robert Williams' log books (Doc. No. 51) is granted; Defendants' motion in limine to exclude any evidence regarding Defendant Robert Williams' records from the Professional Drivers Academy (Doc. No. 52) is granted in part and denied as moot in part; the Court reserves ruling until trial on Defendants' motion in limine to preclude any information acquired by Plaintiffs from a conversation with Edward Bremme (Doc. No. 53); Defendants' motion in limine to preclude any evidence that Defendant Robert Williams refused to give a statement to police before consulting with his attorney (Doc. No. 54) is granted; Defendants' motion in limine to preclude any conclusions by Trooper Choya Hawn regarding blame or fault (Doc. No. 55) is granted; and Defendants' motion in limine to preclude testimony by Plaintiffs' experts Robert B. Ancell and Dr. Anthony Gamboa, Jr. (Doc. No. 57) is denied. Plaintiffs' motion in limine regarding collateral benefits including worker's compensation (Doc. No. 72) is granted.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2003 WL 25676461 (N.D.Ohio)
**(Cite as: Slip Copy)**

*9 IT IS SO ORDERED.

N.D.Ohio,2003.
Honeysett v. Williams
Slip Copy, 2003 WL 25676461 (N.D.Ohio)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 1

Not Reported in F.Supp.2d, 2003 WL 21823483 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

C
Black v. Safer Foundation
N.D.Ill.,2003.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern Division.
Richard BLACK, Plaintiff,
v.
SAFER FOUNDATION and Henrietta Mason, Defendants.
**No. 02 C 2751.**

Aug. 6, 2003.

*MEMORANDUM OPINION AND ORDER*

LEFKOW, J.
*1 Plaintiff, Richard Black ("Black"), has filed a four-count complaint, and a one-count amendment to his complaint, against defendants, Safer Foundation ("Safer") and Henrietta Mason ("Mason"). In Count I, Black alleges that Safer violated the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA"), because it denied him employment for three positions due to his age, 57. In Count II, Black alleges that Safer committed sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000(e) *et seq.* ("Title VII"), because it hired a female while denying him employment. In Counts III and IV Black alleges retaliation because Safer allegedly denied him employment services after he complained about Safer's failure to hire him due to his age and sex. In Counts V and VI, Black alleges disparate impact claims under Title VII and 42 U.S.C. § 1981 because Safer's practice of not hiring ex-criminal offenders within one year of their release from incarceration allegedly discriminates against African Americans, who, according to Black, make up 64% of the Illinois prison system. Count V also contains a § 1981 claim against Mason. Pending before the court is Safer and Mason's motion for summary judgment. For the reasons stated below, the motion is granted.

SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed.R.Civ.P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324;*Insolia v. Philip Morris Inc.,* 216 F.3d 596, 598 (7th Cir.2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.,* 200 F.3d 485, 492 (7th Cir.2000), the court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). The court applies the summary judgment standards with added rigor in employment discrimination cases where intent and credibility are crucial issues. *Courtney v. Biosound,* 42 F.3d 414, 419 (7th Cir.1994).

FACTS [FN1]

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-06672   Document 12-2   Filed 01/16/2008   Page 14 of 20

Not Reported in F.Supp.2d                                                                                           Page 2
Not Reported in F.Supp.2d, 2003 WL 21823483 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

FN1. Black did not respond to the defendants' Local Rule 56.1 Statement of Material Facts. Normally, if a party fails to respond to a Local Rule 56.1 Statement, all such facts supported by the record are deemed admitted. Black, however, is proceeding *pro se,* and the defendants did not abide by the requirement under Local Rule 56.2 regarding notice to *pro se* litigants opposing summary judgment. This rule requires the moving party to give *pro se* litigants specific notice about the requirements in responding to a motion for summary judgment. Since no Local Rule 56.2 notice was given to Black, the court will not deem the defendants' Local Rule 56.1 Statement to be admitted and will conduct an independent review of the entire record to determine which facts are disputed. *See United States v. Reed,* 01 C 6535, 2003 WL 548381, at *1 n. 1 (N.D.Ill. Feb. 25, 2003); *Schafer v. Querry & Harrow, Ltd.,* No. 01 C 3908, 2002 WL 360651, at *2 n. 1 (N.D.Ill. March 7, 2002)

Safer is a non-profit organization which secures employment for ex-criminal offenders and serves as a residence for offenders who qualify for work release. (Def. L.R. 56.1 ¶ 1.) Safer hires ex-offenders and they comprise twelve percent of its staff. (Def. L.R. 56.1 ¶ 2.)

*2 Black is a 57 year old black male. (Def. L.R. 56.1 ¶ 3.) He was convicted of armed robbery, murder and bank robbery and incarcerated from December 29, 1965 through March 21, 2001. (Def. L.R. 56.1 ¶¶ 4-5.)

Black attained several types of credentials throughout his years of incarceration. The Illinois Department of Corrections and Mac Murray College certified Black as a law clerk in 1990. (Def. Ex. B ¶¶ 2-5.) Black received a Bachelor of Science degree from Illinois State University in general studies with a concentration in criminal science and political science in 1993. (*Id.* ¶¶ 21-24.)He worked as a law clerk at Pontiac State Prison from 1991-1995 and at Dixon State Prison from 1996-1999. (*Id.* ¶¶ 1-6.)Additionally, he attended a business management program at Lewis University in 1998. (*Id.* ¶¶ 7-8.)

Black was directed to Safer for employment training in July 2001. (Def. L.R. 56.1 ¶ 6.) While receiving employment skills training, Black claims that he spoke to Safer's receptionist about applying for employment with Safer. (Def. L.R. 56.1 ¶ 7.)

Black alleges that, on or about July 14, 2001, he applied for employment for the positions of (1) Case Manager, (2) Intensive Case Manager, and (3) Correctional Counselor. (Def. L.R. 56.1 ¶ 9.) Safer filled the Case Manager position on November 5, 2001 and the Intensive Case Manager position on December 17, 2001; Safer withdrew the Correctional Counselor position. (Def. L.R. 56.1 ¶ 11.)

The Case Manager position required one year of work experience in individual counseling, a Bachelor's Degree in social work, criminal justice or psychology or equivalent work experience and CADC certification (Certified Addition Drug Counselor). (Def. L.R. 56.1 ¶ 12.) Safer filled the position with LeRoy Abdullah, a 61 year old black male. (Def. L.R. 56.1 ¶ 13.) Abdullah had attended Roosevelt University for four years, majored in psychology, was CADC certified and had 19 years of prior work experience. (Def. L.R. 56.1 ¶ 14.) Safer states that Abdullah was the most qualified candidate at that time. (Def. L.R. 56.1 ¶ 14.)

The Intensive Case Manager position required two years of work experience in Human Services working with high risk youths (ages 16-21) and a Bachelor's Degree in a related discipline or equivalent work experience. (Def. L.R. 56.1 ¶ 15.) Safer filled this position with Yusufu Lonell Mosley, a 49 year old black male. (Def. L.R. 56.1 ¶ 16.) Mosley attended Roosevelt University for 3 1/2 years, majored in sociology and political science, and had 5 years of prior work experience. Safer states that Mosley was the most qualified candidate at that time. (Def. L.R. 56.1 ¶ 17.) The Correctional Counselor position required 3 years of security work experience and one year of supervisory experience. (Def. L.R. 56.1 ¶ 18.)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-06672   Document 12-2   Filed 01/16/2008   Page 15 of 20
Not Reported in F.Supp.2d                                                    Page 3
Not Reported in F.Supp.2d, 2003 WL 21823483 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

Black alleges that on October 11, 2001, Yevette Peeples, an employee of Safer, advised him that he would not be hired by Safer because he lacked employment experience and because he had not been released from incarceration for more than one year. (Def. L.R. 56.1 ¶ 19.) Safer maintains a practice of not hiring ex-offenders within one year of the date of their release from incarceration. (Def. L.R. 56.1 ¶¶ 20-21.) Safer states that this policy is in response to the need for ex-offenders to re-adjust to society before they can effectively reintegrate other ex-offenders into society. (*Id.*)

*3 Black further alleges that Peeples advised him that Safer had previously hired a female without work experience because she had been an intern with the State's Attorney's Office for six months. (Def. L.R. 56.1 ¶ 22.) Black is unable to identify the woman. (Def. L.R. 56.1 ¶ 23.) Safer did, in fact, hire Sara Ryczek, a 27 year old female, to a Case Worker position on June 1, 2000. (Def. L.R. 56.1 ¶ 24.) Ryczek has a Bachelor's Degree in Health and Human Services and Psychology from Buffalo State College and was enrolled in the Criminal Justice Masters Degree Program at Chicago State University. (Def. L.R. 56.1 ¶ 25.) Ryczek served as an intern with the United States Probation and Pretrial Services in Buffalo, New York for four months, before working three years as a Senior Counselor at Community Mission-Aurora House in Lockport, New York and two years as a Case Manager with Southside Day Reporting Center in Chicago, Illinois. (Def. L.R. 56.1 ¶ 26.)

Finally, Black alleges that after he complained to Peeples about not being hired for lack of prior work experience, Safer deprived him of certain employment services and required an escort while he was at Safer. (Def. L.R. 56.1 ¶ 27.) Notwithstanding, Safer admitted at his deposition that he was not denied employment services when he was escorted in the building. (Def. L.R. 56.1 ¶ 28.) Moreover, Safer restricts its clients such as Black from entering certain of its areas. On or about October 14, 2001, Carolyn White observed Black on Safer's fifth floor near the President's office, which is a restricted area. (Def. L.R. 56.1 ¶ 29.) Black refused to leave and became irate and insulting and stated that he wanted to review Safer's policies. Safer staff escorted Black out of the restricted area. (*Id.*) Thereafter, Carolyn White requested that staff monitor Black when present in the building for employment services to ensure that he did not repeat the incident. (*Id.*)

Against Mason, Black seeks relief because he claims that she denied Black employment. (Def. L.R. 56.1 ¶ 30.) Mason, however, states that she had no involvement with Black or the matters complained of by him in this suit. (Def. L.R. 56.1 ¶ 31.)

ANALYSIS

In Count I, Black claims that Safer violated the ADEA because it denied him employment for the case manager, intensive case manager and correctional counselor positions based on his age, 57. In Count II, Black alleges that Safer committed sex discrimination in violation of Title VII because it allegedly employed a female without prior work experience while denying Black employment due to his lack of work experience. Counts III and IV allege that Safer retaliated against Black by denying him certain employment services and by requiring that he be escorted while on Safer's premises because he complained about Safer's failure to hire him. Black's amendment to his complaint also alleges claims for disparate impact violations under Title VII and § 1981 and claims against Mason under § 1981.

*4 Defendants contend that none of these claims can survive a motion for summary judgment because Black fails to establish a *prima facie* case of age discrimination, sex discrimination and discriminatory retaliation. Moreover, defendants argue that Black fails to meet the burden of proving that Safer's practice has an adverse impact upon African Americans. Safer argues, in the alternative, that even if Black established a *prima facie* case of age discrimination, sex discrimination, or discriminatory retaliation, he cannot establish that Safer's legitimate, nondiscriminatory reasons for not hiring him are pretextual. Finally, in regard to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-06672   Document 12-2   Filed 01/16/2008   Page 16 of 20

Not Reported in F.Supp.2d                                                                                    Page 4
Not Reported in F.Supp.2d, 2003 WL 21823483 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Black's claims against Mason, defendants argue that she had no involvement in any of the decisions concerning Black and cannot be held liable under § 1981.[FN2]

> FN2. As a preliminary matter, Black asks the court to consider his motion for estoppel, and asks that this court enter an order declaring that Safer is estopped from asserting the following positions: (1) that it has no record of receiving an employment application and resume from plaintiff; (2) that plaintiff's application and resume were considered and compared to two other applicants for employment in November and December 2001; and (3) that the three positions Black applied for became available in August 2001. In his motion Black presented absolutely no evidence or reasoning to support his claim. Only in his reply brief does Black clarify that his motion for estoppel is for "judicial estoppel." In any event, the court will simply deny the motion and view the facts in a light most favorable to Black, such that for purposes of this motion Safer had a record of receiving his employment application, did not compare it to two other applicants, and the positions did not become available in August 2001. These facts taken as true do not affect the resolution of this motion.

A. ADEA (Count I)

The ADEA prohibits employers from discriminating against an employee who is at least 40 years of age "with respect to his compensation, terms, conditions or privileges of employment, because of such individual's age...."[FN3] 29 U.S.C. §§ 623 and 631. Black may establish age discrimination through either direct or indirect proof.[FN4] *Huff v. UARO, Inc.,* 122 F.3d 374, 380 (7th Cir.1997). "Under the direct method, plaintiff must show either an acknowledgment of discriminatory intent by the defendant or its agents, or circumstantial evidence that provides the basis for an inference of intentional discrimination."*Id.,* citing *Troupe v. May Dep't Stores Co.,* 20 F.3d 734, 736 (7th Cir.1994). The indirect method of proof is the familiar burden-shifting method set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 800-806 (1973).

> FN3. The ADEA's purpose is "to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment."*Wade v. Lerner New York, Inc.,* 243 F.3d 319, 322 (7th Cir.2001), quoting from 29 U.S.C. § 621(b).

> FN4. "A plaintiff seeking relief under the ADEA must establish that he would not have been treated adversely by his employer 'but for' the employer's motive to discriminate against him because of his age ."*Wade,* 243 F.3d at 322.

In this case, Black has presented no direct proof of age discrimination. He must, therefore, use the *McDonnell Douglas* burden-shifting method to prove that Safer discriminated against him because of his age. Under the burden-shifting framework a plaintiff must first establish, by a preponderance of the evidence, a *prima facie* case of discrimination. *Robin v. Espo Eng'g Corp.,* 200 F .3d 1081, 1088 (7th Cir.2000). If a plaintiff is able to meet his or her initial burden, then the burden shifts to the defendant to provide "evidence of a legitimate and nondiscriminatory reason for the employment decision."*Id.* If the defendant provides such a reason, then the plaintiff must prove, by a preponderance of the evidence, that the defendant's stated reason for the employment decision is merely a pretext for discrimination. *Wade,* 243 F.3d at 322.

For Black to establish a *prima facie* case of age discrimination, he must prove that (1) he was a member of the protected class of persons forty or older; (2) the employer was seeking applications for the position and he applied; (3) he was qualified for

Case 1:07-cv-06672   Document 12-2   Filed 01/16/2008   Page 17 of 20

Not Reported in F.Supp.2d                                                                                                Page 5
Not Reported in F.Supp.2d, 2003 WL 21823483 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

the position and was not hired; and (4) a younger person was hired. *Caldwell v. National Ass'n of Home Builders,* 771 F.2d 1051, 1056 n. 2 (7th Cir.1985); *Kastel v. Winnetka Bd. of Educ.,* 946 F.Supp. 1329, 1334 (N.D.Ill.1996). Black satisfies the first and second requirements of the *prima facie* case as he is over the required age of forty years old (Def. L.R. 56.1 ¶ 3), and Safer sought applications for the positions and he applied. (Def. L.R. 56.1 ¶ 9.) Black cannot otherwise establish a *prima facie* case of age discrimination. First, Black fails to meet the third condition. He was not qualified for the case manager position because it required one year of work experience as a counselor or its equivalent. (Def. L.R. 56.1 ¶ 12.) He was also not qualified for the intensive case manager position because it required two years of prior work experience in human services working with high risk youths (ages 16-21) or its equivalent. (Def. L.R. 56.1 ¶ 15.) Moreover, he was not qualified for the Correctional Counselor position which required 3 years of security work experience and one year of supervisory experience, which Black did not have. (Def. L.R. 56.1 ¶ 18.)

*5 Further, Black also fails to meet the fourth requirement of his *prima facie* case because Safer filled the case manager position with a sixty-one year old male who was older than Black. (Def. L.R. 56.1 ¶ 13.) Safer also filled the intensive case manager position with a forty-nine year old male who is insignificantly younger than Black. (Def. L.R. 56.1 ¶ 16).*See Scott v. Parkview Mem. Hosp.,* 175 F.3d 523, 525 (7th Cir.1999) (concluding that the age differences of those who passed the interviews, 32-46, compared to those who failed, 42-48, were too slight to raise an inference of discrimination). Under these circumstances, it is not necessary to proceed passed the *prima facie* case. Safer is entitled to summary judgment on the Count I ADEA claim.

B. Sex Discrimination (Count II)

Under Title VII, an employer cannot " discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex."42 U.S.C. § 2000e-2(a)(1). To prevail on a claim of sex discrimination, a plaintiff must show that the defendant intentionally discriminated against him or her. *Kormoczy v. Sec'y, U.S. Dep't of Hous. and Urban Dev.,* 53 F.3d 821, 824 (7th Cir.1997). A plaintiff may offer evidence through either direct or indirect methods of proof. *Haugerud v. Amery Sch. Dist.,* 259 F.3d 678, 691 (7th Cir.2001)."Under the direct method, plaintiff must show either an acknowledgment of discriminatory intent by the defendant or its agents, or circumstantial evidence that provides the basis for an inference of intentional discrimination."*Huff,* 122 F.3d at 379, citing *Troupe,* 20 F.3d at 736. The indirect method of proof, once again, is the *McDonnell Douglas* burden-shifting method.

Black did not provide any evidence that Safer acknowledged a discriminatory intent or any circumstantial evidence that provides the basis for an inference of intentional discrimination, so he must rely on the indirect method of proof. A Title VII plaintiff must establish a *prima facie* case of sex discrimination by proving that (1) he is a member of a protected class; (2) he applied for, and was qualified for, a vacant position; (3) the employer rejected him for the position; and (4) the employer filled the position with an individual outside of the plaintiff's protected class, or the position remained available. *Gorence v. Eagle Foods Ctrs., Inc.,* 242 F.3d 759, 764-65 (7th Cir.2001); *Mills v. Health Care Serv. Corp.,* 171 F.3d 450, 454 (7th Cir.1999) . Safer contends that Black cannot meet the second and fourth elements of his *prima facie* case because he has provided no evidence that he was qualified for the positions that he applied for and he provided no evidence that female applicants similarly qualified were hired instead of him. The court agrees. Black did not possess the requisite work experience for any of the positions available and Black cannot even identify the woman who he claims was treated more favorable than he. Black merely asserts that Safer supervisor Yvette Peeples informed him that a woman had been hired without experience and Safer provided her with on-the-job training because she had worked as an intern in the State's Attorney's office for six months. However, no employee meets such a profile. Indeed, the only

one that is remotely close is Ryczek who had, in addition to four months of interning experience with United States Probation and Pretrial Services in Buffalo, three years work experience as a Senior Counselor in Lockport, New York and two years work experience as a case manager in Chicago, Illinois. (Def. L.R. 56.1 ¶ 26.) Even if the court assumed that Ryczek is the woman Black refers to and that he has otherwise made out his *prima facie* case, Black presents no evidence to rebut Safer's nondiscriminatory reason for not hiring him, *i.e.,* that Ryczek was substantially more experienced than he. Accordingly, summary judgment is granted in favor of Safer on the Count II Title VII claim.

C. Disparate Impact (Count V)

*6 As distinguished from a disparate treatment analysis, "the necessary premise of a disparate impact claim is that some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination."*Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 987 (1988).Title VII employs a burden-shifting approach for disparate impact claims. *Bew v. City of Chicago,* 252 F.3d 891, 894 (7th Cir.2001). Under Title VII, the plaintiff carries the burden of demonstrating a *prima facie* case of disparate impact by showing through significant statistical disparity that a facially neutral employment practice has a discriminatory impact on a protected class.[FN5] *Watson,* 487 U.S. at 993. The plaintiff's statistics should compare the racial composition of the pool of "qualified" applicants to the racial composition of, in this case, the employees of Safer. *See Gilty v. Village of Oak Park,* 919 F.2d 1247, 1254 (7th Cir.1990). The burden then shifts to the employer to show that the employment practice bears a manifest relationship to the employment in question. *Watson,* 487 U.S. at 990. However, the plaintiff may still prevail by showing that defendant's business necessity claim is pretextual.*Connecticut v. Teal,* 457 U.S. 440, 447 (1982).

FN5. Black also attempts to assert a disparate impact claim under § 1981. To prevail on such a claim Black would have to show that Safer engaged in intentional discrimination. *See Mozee v. American Commercial Marine Serv. Co.,* 940 F.2d 1036, 1051 (7th Cir.1991). Black has presented no such evidence so this claim must fail.

Black fails to demonstrate a *prima facie* case of disparate impact because his statistical analysis is deficient. Black argues that Safer's policy of not hiring ex-offenders until one year after their prison release date creates a disparate impact on non-white applicants because the prison population is composed of sixty-four percent non-whites. In disparate impact cases, it is the eligibility rate of qualified protected class members, not the general representation of protected class members in the population, that is telling. *See Gilty,* 919 F.2d at 1254. Black's statistical analysis falls short of showing a significant statistical disparity that Safer's facially neutral employment practice has a discriminatory impact on non-whites because his analysis did not compare the racial composition of the pool of "qualified" applicants to the racial composition of the employees at Safer. Even if one assumes that the statistics produced by Black crossed the "threshold of reliability" that would allow them to establish a *prima facie* case, Safer showed that its employment practice bears a manifest relationship to the employment in question because Safer felt there was need for ex-offenders to re-adjust to society for at least one year before they could effectively help other ex-offenders reintegrate into society. (Def. L.R. 56.1 ¶ 20-21.) Black presents no evidence to suggest that this reason is pretextual.

Finally, Black brings this suit as an individual, not on behalf of a class, and as such, the foregoing is irrelevant to him unless he can establish that he is a "qualified" non-white applicant. *See Gilty,* 919 F.2d at 1255 (finding that disparate impact relief was not available for an individual unless that individual proved that he or she was a qualified applicant). But as the court concluded earlier, Black is not "qualified" for purposes of his *prima facie* case under Title VII. If Black were to achieve

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-06672  Document 12-2  Filed 01/16/2008  Page 19 of 20

Not Reported in F.Supp.2d    Page 7
Not Reported in F.Supp.2d, 2003 WL 21823483 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

individual relief, then he must establish that his individual circumstances entitle him to that relief, and he cannot rely on the qualifications of those not present before this court to rescue him from the consequences of his own lack of qualifications. *See id.* For these reasons, the court will grant summary judgment in favor of Safer on the disparate impact claim under Title VII.

D. Retaliation (Counts III and IV)

*7 Title VII and the ADEA make it unlawful for an employer to discriminate against an employee for opposing a practice made unlawful under each Act. *See* 42 U.S.C. § 2000e-3(a); 29 U.S.C. §§ 215, 623(d). The retaliation analysis for sex and age discrimination cases are virtually identical. *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 884 (7th Cir.1996). To prevail on a theory of retaliation, the plaintiff must demonstrate three elements: (1) that he opposed an unlawful employment practice; (2) that he suffered an adverse employment action; and (3) that the adverse employment action was caused by his opposition to the unlawful employment practice. *David v. Caterpillar, Inc.*, 324 F.3d 851, 858 (7th Cir.2003); *Cullom v. Brown*, 209 F.3d 1035, 1040 (7th Cir.2000).[FN6] Safer contends that Black's retaliation claim fails because (1) Safer was not his employer, (2) Black did not suffer an "adverse action," and (3) Black admitted in his deposition that Safer did not deny him employment services.

> FN6. A plaintiff can establish an employer's intent to retaliate either directly or indirectly. *David*, 324 F.3d at 858.

Black's retaliation claim is that Safer retaliated against him (imposed restrictions on his movement) because he complained to Peeples that Safer did not hire him for the positions (presumably because of age or sex). Safer's argument that it was not Black's employer is sound. Even though Safer was prohibited by 42 U.S.C. § 2000e-3(a) from discriminating against Black as an applicant for employment, Black's retaliation claim is related to his presence at Safer in conjunction with his post-incarceration transition, not as an employee of Safer.

But even if it is assumed that an employment relationship existed, Black cannot establish a case of retaliation because he did not show that he suffered an adverse employment action. The Seventh Circuit has broadly defined an adverse employment action, but not everything that makes an employee unhappy is an actionable adverse action. *Stutler v. Ill. Dept. of Corr.*, 263 F.3d 698, 703 (7th Cir.2001). To be actionable, the adverse employment action must be a materially adverse change in the terms and conditions of employment and must be more disruptive than a mere inconvenience or an alteration of job responsibilities. *Rabinovitz v. Pena*, 89 F.3d 482, 488 (7th Cir.1996). A materially adverse change might be indicated by termination of employment, a demotion evidenced by a decrease in wage or salary, a material loss of benefits, or other indices that might be unique to a particular situation. *Id.*

Safer imposed a restriction on Black that did not amount to an adverse employment action. Safer restricts all of its clients from entering certain areas, and in October 2001 Black violated the restriction by coming near the President's office, a restricted area, and refusing to leave the area. (Def. L.R. 56.1 ¶ 29.) As a precaution, Safer required an escort for monitoring Black when he was present in the building so that he would not violate the restriction again. The restriction did not relate to Black's job responsibilities or job title, and the restriction is rationally related to the explanation given for its imposition. In sum, the restriction was not unreasonable in light of Safer's explanation; at most, this was a mere inconvenience that does not establish a case of retaliation. *See Rabinovitz*, 89 F.3d at 489 (holding that an employer pinpointing employee for various restrictions on his communication with others, entering and leaving and limits on breaks were reasonable and mere inconveniences that did not amount to retaliation). Therefore, summary judgment must be granted in favor of Safer on the retaliation claim.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2003 WL 21823483 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

E. Mason's Individual Liability Under § 1981

*8 Pursuant to § 1981, individual liability may only be found where the individual herself " participated in the alleged discrimination against the plaintiff."*Behnia v. Shapiro,* 961 F.Supp. 1234, 1237 (N.D.Ill.1997); *Daulo v. Commonwealth Edison,* 892 F.Supp. 1088, 1091 (N.D.Ill.1995) ( " Section 1981 liability against an individual demands personal involvement in discrimination."). To state a claim under § 1981 against Mason, Black must sufficiently allege that Mason possessed an " intent to discriminate on the basis of race."*Behnia,* 961 F.Supp. at 1237. Mason argues, and the court agrees, that Black does not provide sufficient evidence showing that Mason possessed an intent to discriminate against Black because Mason did not have any involvement with Black, his employment services, or the selection of the applicants who were hired for the positions he claimed to have applied for. (Def. L.R. 56.1 ¶ 31.) Accordingly, summary judgment is granted in favor of Mason.[FN7]

> FN7. Mason also argues that she is not individually liable for Title VII or ADEA claims, however, plaintiff only alleges liability against Mason in his amendment to the complaint under 42 U.S.C. § 1981, so this is the only liability that the court will address.

CONCLUSION

For the reasons stated above, Safer and Mason's motion for summary judgment is granted [# 18]. Black's motion for judicial estoppel is denied [# 28]. This case is terminated.

N.D.Ill.,2003.
Black v. Safer Foundation
Not Reported in F.Supp.2d, 2003 WL 21823483 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.