# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George M. Marovich | Sitting Judge if Other than Assigned Judge | Sidney I. Schenkier |
|---|---|---|---|
| **CASE NUMBER** | 07 C 6672 | **DATE** | 2/12/2008 |
| **CASE TITLE** | Equal Employment Opportunity Comm. vs. Dolgencorp | | |

**DOCKET ENTRY TEXT**

For the reasons set forth below, the Court grants the application of the United States Equal Employment Opportunity Commission ("EEOC") for enforcement of amended subpoena CH-07-227 (doc. # 1). However, the Court narrows the subpoena to require production by Dolgencorp. Inc. of information, for each month during the period from 01/01/04 through 04/01/07, sufficient to identify within Division 5 of Dolgencorp, Inc.: (1) by race and job title, the number of employees who received contingent offers of employment, and (2) by race and job title, the number of employees whose contingent offers of employment were revoked due to criminal background checks. Dolgencorp shall produce that information to the EEOC by 03/13/08. The EEOC's request for an award of costs (but not attorneys' fees) incurred in bringing this action is granted. All matters subject to the referral having been concluded, the referral is hereby terminated.

■ [ For further details see text below.]

Docketing to mail notices.
*Copy to judge/magistrate judge.

# STATEMENT

On 10/29/04, Regina Fields-Herring ("Charging Party") filed a charge of discrimination against Respondent, Dolgencorp, Inc., alleging unlawful discrimination on the basis of her race, Black. The charge alleges that the Charging Party was hired on 09/21/04, but that two days later, on 09/23/04, was terminated. The charge asserts that Respondent told the Charging Party that the termination was the result of Respondent having learned of a prior felony conviction, even though the Charging Party alleges that she had informed Respondent of that conviction at the time she was hired. The current dispute involves the EEOC's ongoing attempt to investigate that charge.

During the EEOC investigation, Respondent asserted that it terminated the Charging Party not due to race, but solely because a standard criminal background check that Respondent routinely performs on all new employees disclosed that the charging Party had a prior criminal conviction that disqualified her from employment. In the course of the investigation, Respondent also provided the details of its criminal background check program, including information about the particular prior convictions that would (or would not) disqualify a person from employment, In April 2007, the EEOC served an administrative subpoena on Dolgencorp seeking information designed to determine whether the criminal background check program has a disparate impact on Black persons who received contingent offers of employment. In June 2007, in response to Respondent's petition to revoke that subpoena, the EEOC amended the subpoena to seek the following information from Dolgencorp for the period 01/01/04 through 04/01/07: (1) by race and job title, the number of employees who received contingent offers of employment, and (2) by race and job title, the number of employees whose contingent offers of employment were revoked due to criminal background checks. Dolgencorp again petitioned to revoke the subpoena; that petition was denied on 10/01/07.

| | Courtroom Deputy Initials: | mm |
|---|---|---|

## STATEMENT

When production of the requested information was not forthcoming, the EEOC filed this application for a rule to show cause why the subpoena should not be enforced and for an award of costs of this action (doc. # 1). The application was referred to this Court for ruling (doc. # 8). The Court has received and considered Respondent's lengthy written response to the application (doc. # 12), as well as three declarations Respondent separately filed in connection with that response (doc. # 27). The Court discussed the issues raised by the application and response with the parties during hearings on the record on 01/24/08 and 02/05/08, as well as during a telephone conference held on 02/12/08.

In its response, Respondent asserts two threshold objections to the subpoena which, as we explained during the 01/24/08 hearing, we find unpersuasive. *First*, Respondent asserts that the charge is insufficient to support any investigation (Resp. Mem. at 5-9). We disagree. The charge of discrimination alleges the employment decision that is claimed to be discriminatory: the termination of the Charging Party after she had been hired. The charge alleges the dates of the relevant acts: an interview on 09/20/04, a hiring made on 09/21/04, and a termination on 09/23/04. The charge identifies the alleged discriminatory basis for the termination: the race of the Charging Party. The charge also identifies the involvement of Respondent's practice of doing criminal background checks in the challenged employment decision. These allegations are more than enough to satisfy the requirements for what a charging party – who often is unrepresented – must include in the charge.

*Second*, Respondent argues that the information the EEOC seeks pursuant to the subpoena at issue exceeds its limited investigative authority (Resp. Mem. at 9-18). Again, we respectfully disagree. The Seventh Circuit has confirmed that the EEOC has the authority to file a complaint based on "[a]ny violations that the EEOC ascertains in the course of a reasonable investigation of the charging party's complaint . . ." *EEOC v. Caterpillar, Inc.*, 409 F.3d 831, 833 (7th Cir. 2005). Moreover, that complaint need not be "closely related to the charge that kicked off the Commission's investigation." *Id*. In this case, the EEOC has been presented with a charge of racial discrimination in the termination of Charging Party's employment. As part of its authority to conduct a "reasonable investigation of the charging party's complaint," the EEOC is entitled to explore different theories under which racial discrimination might be proven: such as, a disparate treatment theory or a disparate impact theory. The information that the EEOC seeks is reasonably calculated to investigate the factual merit, *vel non*, of a disparate impact theory, as it would shed light on whether the effects of Respondent's implementation of its criminal background check policy fall more heavily on Black employees than on White employees, and if so, whether it does so in a statistically significant way. Respondent argues at length that the EEOC should not be permitted to explore this question because a disparate impact theory is not legally viable in the context of a criminal background check policy (Resp. Mem. at 11-18). However, Respondent candidly acknowledges that there is divided case law on this point, none of it controlling within this Circuit. We are not prepared to limit the EEOC's ability to investigate a the potential disparate impact of Respondent's particular implementation of its criminal background check policy in the absence of controlling case law foreclosing that theory of discrimination.

Finally, Respondent argues that even if the charge is valid and the subpoena is within the scope of the EEOC's investigative authority, enforcement of the subpoena should be denied because it is too broad. The EEOC has explained that the requested information is needed from a broader pool than the particular location at which the Charging Party worked, in order to have a sufficient sample size from which to draw reasonable investigative conclusions. The EEOC has stated that it seeks 10,000 to 15,000 in each 12-month period to provide a suitable sample size to offer guidance on whether Respondent's criminal background check policy has a disparate impact on Black employees. Respondent has not offered any evidence that a smaller sample size would be adequate for such a statistical analysis. We are not persuaded by argument that the EEOC request is a "prohibited fishing expedition." That criticism could be leveled against virtually any investigation, as a common goal of an investigation is to find out information that one does not already know. That is the EEOC goal here, and as we have explained above, is a legitimate one. We find more persuasive Respondent's argument that the request in the subpoena for information on a nationwide basis is overly broad.

Information provided by the parties during court hearings discloses that data from Division 5 of Respondent (which includes the location at which the Charging Party worked) would provide the numbers necessary to achieve the EEOC's desired sample size. Thus, while we grant enforcement of the subpoena, we do so limited to information from Respondent's locations within Division 5.

## STATEMENT

Accordingly, for the foregoing reasons, we grant the EEOC's application for rule to show cause, and we enforce the amended subpoena as limited above. Respondent shall produce the information called for by the subpoena, and this order, by 03/13/08. We also grant the EEOC its request for costs incurred in connection with bringing this application. Our ruling today expresses no view as to the merit of the EEOC charge, or as to what the requested information will show about Respondent's implementation of its criminal background check policy.