**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY** | ) | |
| **COMMISSION,** | ) | |
| | ) | |
| **Applicant,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **1:07-cv-06672** |
| **DOLGENCORP,** | ) | |
| | ) | |
| **Respondent.** | ) | |

_____

**MEMOPRANDUM IN SUPPORT OF RESPONDENT'S OBJECTIONS TO THE**
**RECOMMENDED GRANT OF THE EEOC'S APPLICATION FOR**
**ENFORCEMENT OFAMENDED SUBPOENA**
_____

## I.  INTRODUCTION

Dollar General, an operator of retail stores, conducts criminal background checks on its Store Clerks after it has made a contingent offer of employment to them. (Affidavit of Tammy Hammond-Loth ("Hammond-Loth Aff.") at Ex. C.)[1]  These Store Clerks are responsible for interacting with Dollar General's customers, protecting its assets and handling cash, among other responsibilities.  (Affidavit of Jennifer Gingery Cook ("Cook Aff.") at Ex. A(E).)[2]

Regina Fields-Herring had her contingent offer of employment as a Store Clerk with Dollar General revoked because, within the parameters of Dollar General's time and nature-specific criminal conviction matrix, she had disqualifying convictions for felony possession of a controlled substance and felony probation violation (for which she was

---

[1] The redacted version of the Affidavit of Tammy Hammond-Loth has been filed as Docket Entry # 25. The complete Affidavit has been filed under seal.  (*See* Docket Entry # 27.)

[2] The redacted version of the Affidavit of Jennifer Gingery Cook has been filed as Docket Entry # 22 and 23.  The complete Affidavit has been filed under seal.  (*See* Docket Entry # 27.)

sentenced to incarceration for eighteen months). (Cook Aff. at Ex. A; Loth Aff. at ¶ 7, Ex. A.)

The EEOC is now investigating whether Dollar General's refusal to hire criminals, duly convicted by state and federal courts, violates Title VII. The EEOC's application for enforcement of its subpoena in pursuit of this claim should be denied because: (1) a jurisdictional prerequisite to this action under the United States Supreme Court's decision in *EEOC v. Shell Oil* – the filing of a charge sufficient to support this enforcement action – has not been met; (2) the EEOC's inquiry exceeds its limited authority to investigate; and (3) the information sought by the subpoena is not relevant to the charge under investigation and is overly broad.

Finally, even if the charge is sufficient, and the investigation is within the EEOC's jurisdiction, Respondent should not be ordered to produce the information sought on a month by month basis. The EEOC's subpoena did not request production of the information in that fashion.

## II. <u>STATEMENT OF PROCEEDINGS</u>

The EEOC instituted this subpoena enforcement action on November 11, 2007. (Docket Entry # 1.) By order of the Executive Committee dated December 10, 2007, this case was referred to Magistrate Judge Schenkier. (Docket Entry # 8.)

On February 12, 2008, Magistrate Judge Schenkier granted the EEOC's application to enforce the subpoena, as modified. (Docket Entry # 29.) The Magistrate Judge rejected Respondent's contentions that the charge was insufficient and that the investigation and information sought exceeded the EEOC's power. (Id.) Magistrate Judge Schenkier did, however, narrow the subpoena to require production of the information only from Respondent's Division 5, which is comprised of eight states, instead of ordering nationwide production. (Id.) In addition, the Magistrate ordered that this information be produced for a three and a half year period. (Id.)

## III. <u>STANDARD OF REVISION</u>

This Court reviews this matter *de novo*:

> Because Magistrate Schenkier's order "would be dispositive of the entire matter before the Court (that is, whether to enforce the administrative subpoena[a])," this Court's review of that order is *de novo*. *National Labor Relations Board v. G. Rabine & Sons, Inc.*, 2001 WL 1772333

(N.D. Ill. Sept. 10, 2001)[3]; Fed. Civ. Pro. 72(b); 28 U.S.C. § 636(b)(1). "The District Court may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the Magistrate Judge with instructions." *Id.*

## IV.  FACTS[4]

### A.     Dollar General

Dollar General is a retail distributor of consumable basics with over 8,000 stores in thirty-five states.  (Cook Aff. at Ex. E.)  Consumable basics are items that are frequently used and replenished by its customers – such as milk, paper products, food, snacks, health and beauty aids, and cleaning supplies.  (Id.)

### B.     Store Clerk Job Description

When Dollar General opens a new store, temporary Store Clerks are hired to assist in preparing the store for opening.  (Cook Aff. at Ex. A.)  Once a store is opened, Store Clerks act as the point of contact with customers, and are responsible for receiving, stocking, and checking out merchandise.  (Id. at Ex. A(E).)  They are also responsible for protecting Company assets.  (Id.)  As the job description also indicates, Store Clerks operate the cash register, collect payment, and make change.  (Id.)

### C.     Dollar General's Criminal Background Check Policy

It is Dollar General's policy to conduct criminal background checks on persons to whom it has made a conditional offer of employment.  (Loth Aff. at ¶ 2, Ex. C at ¶ 2.)  A criminal records check is part of that investigation.  (Id.)

Criminal convictions are not an absolute bar to continued employment at Dollar General.  (Loth Aff. at ¶ 5, Ex. A.)  Depending on the nature of the offense and the time of its disposition, some convictions are no bar at all to continued employment.  (Id.)  Some convictions preclude the individual from working for a specified period of time, and some felony convictions are permanent bars to employment at Dollar General.  (Id.)

Under Dollar General's policy, not every criminal conviction disqualifies one from continued employment.  (Id. at ¶ 6.)  For example, employees are eligible to continue employment if they have no more than one conviction in a five year period for

---

[3]     Unpublished opinions are attached hereto as Exhibit 1.
[4]     Due to the sensitive nature of the personal information discussed, Dollar General filed under seal affidavits establishing these facts.

misdemeanor bad check, breach of peace, *etc*.  (Id.)  Other misdemeanor convictions may disqualify the employee for three years or five years after the date of disposition, depending on the nature of the offense.  (Id.)

Certain felony convictions may disqualify the employee for three years, ten years, or permanently, depending on the nature of the offense.  (Id.)  For example, a felony conviction for possession of a controlled substance disqualifies the individual for a period of ten years from the disposition date, as does a felony violation of probation conviction. (Id.)

**D.**      **Charging Party's Application and Criminal History**

In September, 2004, Dollar General was opening a new store in Waukegan, Illinois.  (Cook Aff. at Ex. A.)  On September 17, 2004, Charging Party Regina Fields-Herring applied for a position as a store clerk at that store.  (Id.)  She was made a conditional offer of employment.  (Id.; Loth Aff. at ¶ 7.)  In accordance with Dollar General's policy, a criminal background check was performed on her.  (Id.)

The check on Charging Party revealed that, on November 10, 1998, she was found guilty of felony possession of a controlled substance.  (Loth Aff. at ¶ 7, Ex. B.) Moreover, that check also revealed that on April 4, 2000, Charging Party's probation was revoked, and she was sentenced to eighteen months' confinement with the state.  (Id.)

Based on either of these felony convictions, Charging Party was ineligible to continue her employment at Dollar General.  (Id. at ¶ 8.)  Under the matrix, both felony convictions carried a ten year disqualification.  (Id. at Ex. A.)  The most recent conviction, for probation violation, was less than five years prior to her seeking employment at Dollar General, and the felony conviction for possession of a controlled substance was less than six years old.  (Id. at ¶ 7, Ex. B.)  Therefore, her conditional offer of employment was revoked.  (Id. at ¶ 8.)

**E.**      **The EEOC Charge**

On October 28, 2004, the underlying Charge of Discrimination was filed by Fields-Herring.  (Cook Aff. at Ex. A(A).)  That charge gives September 23, 2004 as <u>both</u> the date of the earliest <u>and</u> the latest discrimination.  (Id.)  The "particulars" of the charge were:

I interviewed for a position with Respondent on or about
September 20, 2004.  I began employment with Respondent on
September 21, 2004 as a Stocker/Cashier.  At the time I was
hired, I informed Respondent that I had a felony conviction.
On September 23, 2004, Respondent informed me that I was
terminated because of the felony conviction.

I believe I have been discriminated against because of my race,
Black, in violation of Title VII of the Civil Rights Act of 1964,
as amended.

**F.**     **Information Provided to the EEOC by Dollar General**

In connection with the investigation of that charge, Dollar General has already

provided the EEOC with, *inter alia*, the following information and documents:

1.     Position Statement with attachments, including Charging Party's
application, job description and criminal background check
result;

2.     Criminal background check results for all employees at the
Waukegan, Illinois location between July 1, 2004 and December
31, 2004**;**

3.     Dollar General's criminal background check matrix;

4.     All applications for employment at the Waukegan, Illinois
location for July 1, 2004 through December 31, 2004.

5.     A list of employees at the Waukegan, Illinois location, including
their race.

(Cook Aff. at ¶ 4.)

That information demonstrates, *inter alia*, that a conditional offer of employment

was made to a similarly situated Caucasian who applied for a temporary store clerk

position.  (Cook Aff. at Ex. D.)  That offer was revoked as a result of the background

check.  (Id.)  Additionally, this evidence shows that a similarly situated African-

American was hired by Dollar General on or about September 16, 2004.  (Id.)  She

successfully passed the background check, and she remained employed at the store.  (Id.)

**G.**     **The Subpoena at Issue**

The EEOC has attempted to subpoena the following information from Dollar

General:

1.      Provide the **number** of employees given contingent offers of employment by Dolgencorp and DG Retail LLC, during the period of January 1, 2004 to April 1, 2007.

   a.      Break the number down by position title and, within position title, by race.

2.      Of those employees identified above, provide the **number** of employees who had their contingent offers of employment revoked as a result of a criminal background check.
   a.   Break the number down by position title, and, within position title, by race.

(emphasis in original.)

This request is not limited geographically or by offense. No reason is given for the three and one-half year temporal scope.

As Dollar General has informed the Commission, in fiscal year 2004, Dollar General Corporation and its subsidiaries made approximately 125,000 contingent offers of employment. (Affidavit of Dorothy Freeland at ¶ 4.) In fiscal year 2005, Dollar General made approximately 138,000 conditional offers of employment. (Id.) In fiscal year 2006, Dollar General made approximately 152,000 conditional offers of employment. (Id.) As a result, this information request relates to over 415,000 persons.

## V.  ARGUMENT

A.      There Has Been No Valid Charge of Discrimination Filed, Which is a Jurisdictional Prerequisite to this Action.

   1.      Introduction

The Supreme Court holds that the existence of a valid charge of discrimination under Title VII "is a jurisdictional prerequisite to judicial enforcement of a subpoena issued by the EEOC." *EEOC v. Shell Oil Co.*, 466 U.S. 54, 65 (1984). The purported charge here does not contain a "clear and concise statement of the facts, including the pertinent dates, constituting the alleged unfair employment practices," as mandated by *Shell Oil*. Nor does the purported charge meet other requirements imposed by the EEOC's own regulations. Therefore, there is no valid charge of discrimination sufficient to support this action.

   2.      The Shell Oil Decision

In *Shell Oil*, the Supreme Court answered the question of "how much information must be included in the [Title VII] charge and provided to the employer before the Commission may secure judicial enforcement of an administrative subpoena . . . ." 466 U.S. at 56. The charge is crucial in subpoena enforcement actions, the Court first recognized, because the allegations of the charge confine the EEOC's limited statutory power to investigate:

> It is apparent from the structure of the statute that two of those steps – the charge and the subpoena – are closely related . . . [T]he EEOC's investigative authority is tied to charges filed with the Commission; unlike other federal agencies that possess plenary authority to demand to see records relevant to matters within their jurisdiction, the EEOC is entitled to access only to evidence "relevant to the charge under investigation." § 2000e-8(a).

*Id.* at 64(Emphasis added).

Thus, in order to avoid the EEOC thwarting "Congress' desire to prevent the Commission from exercising unconstrained investigative authority, the Supreme Court held that a valid charge of discrimination is a "jurisdictional prerequisite" to judicial enforcement of EEOC subpoenas. *Id.* at 65.

    3.    A Valid Charge of Discrimination for Subpoena Enforcement Purposes must Comply with 29 U.S.C. § 1601.12(a) and 1601.15(b).

According to *Shell Oil*, to constitute a valid charge of discrimination for subpoena enforcement purposes the Charge must comply with the provisions of 29 C.F.R. § 1601.12(a):

> The statute itself prescribes only minimal requirements pertaining to the form and content of charges of discrimination. Section 706(b) provides merely that "[c]harges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires." 42 U.S.C. § 2000e-5(b). However, in accordance with the last-mentioned clause, the EEOC has promulgated a regulation that provides, in pertinent part, that "[e]ach charge should contain . . . [a] clear and concise statement of the facts, including the pertinent dates, constituting the alleged unlawful employment practices." 29 C.F.R. § 1601.12(a)(3)(1983). Until rescinded, this rule is binding on the Commission as well as Complainants. *Id*. at 68 (emphasis added).

29 C.F.R. § 1601.12(a)(3) provides, in its entirety:

> (a)  Each charge should contain the following:  (3) a clear and
> concise statement of the facts, including pertinent dates,
> constituting the alleged unlawful employment practices:  *see* §
> 1601.15(b).

In turn, § 1601.15(b), which is incorporated in § 1610.12(a)(3) states:

> (b)  As part of the Commission's investigation, the Commission
> may require the person claiming to be aggrieved to provide a
> statement which includes:  (1) a statement of each specific harm
> that the person has suffered and the date on which each harm
> occurred; (2)  For each harm, a statement specifying the act,
> policy or practice which is alleged to be unlawful; (3) For each
> act, policy, or practice alleged to have harmed the person claiming
> to be aggrieved, a statement of the facts which lead the person
> claiming to be aggrieved to believe that the act, policy or practice
> is discriminatory.

Because of the statute and the EEOC regulation, the Supreme Court in *Shell Oil*
rejected the implication that a valid charge "should be permitted merely to allege that an
employer has violated Title VII":

> Such a result would be inconsistent with the evident purpose of
> the regulation – to encourage Complainants to identify with as
> much precision as they can muster, the conduct complained of.
> And it would render nugatory the statutory limitation of the
> Commission's investigative authority to materials "relevant" to a
> charge.

*Id*. at 73.

Thus, the Supreme Court also held in *Shell Oil* that, in order to satisfy §
1601.12(a)(3), the charge

> [s]hould identify the groups of persons that he has reason to
> believe have been discriminated against, the categories of
> employment positions from which they have been excluded, the
> methods by which the discrimination may have been effected,
> and the periods of time in which he suspects the discrimination to
> have been practiced.

4.  The Purported Charge at Issue Here is Not a Valid Charge for Subpoena
Enforcement Action

"Whether a specific charge is valid is determined from the face of the charge, not from extrinsic evidence." *EEOC v. United Airlines, Inc.*, 287 F.3d 643, 650 (7th Cir. 2002).

Here, the asserted "particulars" of the charge allege, in toto:

> I interviewed for a position with Respondent on or about September 20, 2004.  I began employment with Respondent on September 21, 2004 as a Stocker/Cashier.  At the time I was hired, I informed Respondent that I had a felony conviction. On September 23, 2004, Respondent informed me that I was terminated because of the felony conviction.
>
> I believe I have been discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

The charge alleges that there was only one day that the discrimination took place: September 23, 2004.  The charge does not allege a continuing violation.[5]

The purported charge here fails to comply with the requirements of the *Shell Oil* decision,[6] as well as the EEOC's own regulations.  As there is no valid charge from which to base this proceeding, the action should be dismissed.

This charge clearly does not "fulfill the legislative and regulatory command that the charge, identify as precisely as possible the appropriate area of inquiry to determine whether there is a violation of the Act." *EEOC v. Quad/Graphics, Inc.*, 63 F.3d 642, 647 (7th Cir. 1995).  As an initial matter, the charge does not even identify what employment

---

[5]     In *EEOC v. A. E. Staley Manufacturing Co.*, 711 F.2d 780, 787 (7th Cir. 1983), the Seventh Circuit recognized the importance of the "date" requirement for a charge:

> The "date" element of § 706(b) is an important statutory requirement.  In *Dean Witter* . . . the Ninth Circuit noted:
>
> > The dates of the alleged unfair labor practices bear directly on the relevancy of an EEOC enforcement subpoena.  By disclosing the dates of the alleged practices under investigation, the EEOC will inform the charged party, as well as the court which has asked to enforce a subpoena, what the proper scope of the investigation should be time-wise.  Hopefully, disclosure of the dates at the outset will discourage resistance to discovery by employees fearful of open-ended investigation, and if necessary, will aid the court in determining the relevancy of the matters sought to be subpoenaed.  643 F.2d at 1338. (Emphasis added.)

[6]     While *Shell Oil* dealt with a Commission's charge, that distinction is irrelevant here.  29 C.F.R. § 1601.12(a)(3) applies to all EEOC charges.

practice is at issue.  There is no express claim, for example, of discrimination in recruiting, hiring, termination, wages, promotions or terms and conditions of employment.  Instead, Charging Party says only that she was "discriminated against. . . in violation of Title VII."

Second, there is no statement of facts on the face of the charge "constituting the alleged unlawful employment practice", as required by *Shell Oil*, § 1601.12(a)(3). Charging Party's subjective belief of discrimination, no matter how genuine, cannot demonstrate that she was a victim of discrimination.  *Andre v. Bendix Corp.*, 841 F.2d 172, 176 (7th Cir. 1988).  The charge is devoid of facts constituting any alleged unlawful employment practice and never alleges that Dollar General's background check policy violates Title VII (or that it operated to discriminate in violation of Title VII.)  Similarly, there is no statement specifying the act, policy, or practice which is alleged to be unlawful nor is there any statement of facts which lead the person claiming to be aggrieved that the act, policy or practice is discriminatory, as required by § 1601.15(b).

Contrary to the requirements of *Shell Oil*, this charge does not identify the methods by which the alleged discrimination may have been effected.  Indeed, this charge is the prototypical charge that alleges "merely" that "an employer has violated Title VII", which *Shell Oil* rejects.  466 U.S. at 73.  It clearly does not "identify with as much precision as [the EEOC] can muster the conduct complained of."  *Id.* at 73.

The charge here does, however, "render nugatory the statutory limitation of the Commission's investigative authority to materials 'relevant' to a charge."  *Id.*  For example, based on this "charge", the EEOC could attempt to investigate any race discrimination of any kind, from recruitment, hiring, terms and conditions of employment, wages, promotions, demotions, performance reviews, harassment, termination, *etc.* because the "charge" does not even identify the alleged unlawful act complained of.  If this charge is valid, the EEOC could investigate any theory of liability under any of these claims.  Just as importantly, as the EEOC is attempting to do here, the Commission could investigate all of these issues, under any theory, for any period of time

at any location it chooses.[7]  Certainly, the Congressional limitation on the EEOC's authority is thwarted by this supposed charge.

Thus, because this charge does not constitute a valid charge of discrimination for subpoena enforcement purposes, this action should be dismissed.

B.    The EEOC's Inquiry Here Exceeds Its Limited Authority to Investigate.

    1.    This Investigation is Not Within the Limited Investigative Authority Delegated to the EEOC.

In Title VII, Congress intentionally limited the EEOC's investigative authority. The investigative authority delegated to the EEOC is not plenary.  *EEOC v. United Airlines, Inc.*, 287 F.3d 643, 652 (7th Cir. 2002).  In *EEOC v. Quad/Graphics, Inc.*, 63 F.3d 642, 646 (7th Cir. 1995), the court stated, in discussing *Shell Oil*:

> It noted that it is clear that the Congress, in enacting Title VII, had intended to restrict the investigative power of the EEOC to the evaluation of actual charges filed with the agency; the Commission did not have the power, granted to many other agencies, to conduct *sua sponte* investigations of any activity within its statutory area of responsibility.

Indeed, the "charge requirement evidences 'Congress' desire to prevent the Commission from exercising unconstrained investigative authority.'"  *United Airlines*, 287 F.3d at 653, *quoting Shell Oil*, 466 U.S. at 65.  A reviewing court must be satisfied that the EEOC's demand for information is not "too indefinite" and that it has not "been made for an illegitimate purpose."  *Shell Oil Co.*, 466 U.S. at 72 n. 26.

The Supreme Court "has also cautioned that the charge and relevance requirements should not be interpreted so broadly as to render the statutory language a 'nullity.'"  *United Airlines*, 287 F.3d at 653.  There must be a "realistic expectation" that something may be discovered.  *Id.*  This "requirement of relevance, like the charge requirement itself, is designed to cabin the EEOC's authority and prevent 'fishing expeditions.'"  *Id.* (*citing EEOC v. K-Mart Corp.*, 694 F.2d 1055, 1066 (10th Cir. 1982).

    2.    The EEOC's Attempt to Conduct an Unconstrained Investigation Should be Rejected.

---

[7]    For example, here, although the charge that the discrimination took place on only one day, the EEOC has requested information for a three and one-half year period.  No basis is provided by the EEOC for requesting information for this three and one-half year period.

A valid charge is a jurisdictional prerequisite to the enforcement of an EEOC subpoena. As shown above, the "charge" at issue here does not satisfy the *Shell Oil* requirements. Indeed, this charge states only an individual's subjective belief that "an employer has violated Title VII," which *Shell Oil* rejects as a valid charge. 466 U.S. at 72-73.

Because there is no valid charge, Congress' desire that the EEOC's investigative authority be constrained is rendered "nugatory" in this case. *Shell Oil*, 466 U.S. at 73. Indeed, in this situation, there would be no constraint at all upon the EEOC's investigation. The Charging Party's subjective belief that she has been discriminated against, without specifying any particular area, would allow the EEOC unfettered investigative authority over any and all employment practices, from recruitment to termination, to any term or condition of employment, to benefits, *etc*. This clearly flies in the face of the statutory language, the *Shell Oil* decision, and legislative intent. Indeed, as shown below, the EEOC here seeks to investigate a practice that is not even a violation of Title VII. Therefore, this Court should deny enforcement of the EEOC's subpoena.

3. <u>The Use of Criminal Convictions Does Not Violate Title VII. Therefore, This Inquiry is Not Within the EEOC's Jurisdiction</u>.

The EEOC is entitled only to evidence "that relates to unlawful employment practices covered by" Title VII. 42 U.S.C. § 2000e-8(a). From Dollar General's understanding of the defective charge at issue, it is apparently the EEOC's position that a refusal by a retailer to hire as store clerk's criminals duly convicted of specified crimes by state and federal courts, within specified periods of time, violates Title VII.

Title VII does not make convicted criminals a protected class, nor does it require employers to hire those who have engaged in criminal behavior. As the court in *EEOC v. Carolina Freight Carriers Corp.*, framed the issue and answer:

> Can an employer refuse to hire persons convicted of a felony even though it has a disparate impact on minority members?
>
> This court's answer is a firm "Yes."

723 F. Supp. 734, 753 (S.D. Fla. 1989).

Similarly, this Court has also recognized that the use of criminal convictions to disqualify applicants does not violate Title VII:

> But both intuitively and as a matter of law it is obvious that an employment policy that bars the hiring of ex-felons – at least for a job as "collector," . . . does not violate Title VII.

*Williams v. Carson Pirie Scott*, 1992 WL 229849 (N.D. Ill.) at *1.

4.    The Flawed *Green* Decision is Distinguishable.

On the other hand, there is absolutely no case law supporting the EEOC's proposition that Dollar General's focused, time limited criminal conviction policy may allegedly violate Title VII. As far an as employer's use of criminal convictions for hiring purposes, the <u>only</u> federal court case to hold an employer liable under a Title VII disparate impact theory is *Green v. Missouri Pacific Railroad Co.*, 523 F.2d 1290 (8th Cir. 1975). Not only is that case easily distinguishable from the matter before this Court, but, with "all due respect to the members of the Eighth Circuit, their holding is ill founded." *Carolina Freight*, 723 F. Supp. at 752.

*Green* is distinguishable from the issue presented here because the policy at issue there was "an absolute policy of refusing consideration for employment to any person convicted of a crime other than a minor traffic offense." Green, 523 F.2d at 1292. As foreseen by the Supreme Court, the policy at issue in *Green* was a "sweeping disqualification of all those with any past record of unlawful behavior, however remote, insubstantial or unrelated to applicants' personal qualifications as an employee." *McDonnell Douglas v. Green*, 411 U. S. 792, 806 (1973).

In contrast, the policy at issue here applies only to people with certain types of convictions for specified periods of time, as the policy found lawful in *El v. Southeastern Pennsylvania Transportation Authority*, 479 F.3d 232, 243 (3rd Cir. 2007). Indeed, no federal court has found a policy such as that utilized by Dollar General to violate Title VII's ban on disparate impact discrimination. *See also A. B. & S. Auto Services, Inc. v. Southshore Bank of Chicago*, 962 F. Supp. 1056, 1063-64 (N.D. Ill. 1997) (cases concerning blanket exclusion of applicants with arrest records are inapplicable in a lending case.)

In addition to the reasons cited by the *Carolina Freight* court for recognizing that the *Green* holding is "ill founded", that decision is suspect for several other reasons.

First, in *Green*, there was <u>no</u> adverse impact in the selection of employees.  In *Lindeman & Grossman*, Employment Discrimination Law, 4th Ed. (BNA), Vol. 1 at page 137 n. 112, the authors noted that there was absolutely no disparate impact under <u>any</u> standard in the selection of employees in *Green*:

> In *Green v. Missouri Pacific Railroad*, 523 F.2d 1290, 1294-95, 10 F.E.P. 1409 (8th Cir. 1985), a case involving non-scored objective criteria, the court found adverse impact based on a rejection rate of 2.23 percent for Whites verses 5.3 percent for African-Americans, a rejection rate of 2.5:1.  Had the court examined the case in terms of <u>selection</u> rates (*i.e.*, 97.7 percent for Whites verses 94.7 percent for African-Americans) instead, the ratio would have been 1/03:1, <u>which is insufficient to establish adverse impact under any standard</u>.  (Emphasis added).

The *Green* adverse impact analysis is flawed for another reason.  It is the pool of <u>qualified</u> applicants that must be analyzed in order to determine whether adverse impact exists.  *Wards Cove Packing Co. v. Atonia*, 490 U.S. 642, 650 (1989).  However, in *Green*, the court did not consider at the liability stage whether Green was otherwise qualified for the position.  Instead, the court remanded the case with instructions to determine whether he was qualified.  *Green*, 523 F.2d at 1298-99.  Similarly, there was no analysis of the qualifications of the other applicants.  *Id*. at 1299.  Therefore, the disparate impact analysis made by the Eighth Circuit was erroneous.

     5.     <u>Case Law Interpreting the Viability of a Disparate Impact Claim – Including the EEOC's Own Case – Rejects the EEOC's Position Here</u>.

In short, there is no reasoned case law finding unlawful any criminal conviction policy such as that utilized by Dollar General.  In *Green*, the petition for rehearing *en banc* was denied on a 4-3 vote.  In dissent from that decision, Chief Judge Gibson aptly noted:

> In effect, the present case has judicially created a new Title VII protected class – persons with conviction records.  This extension, if wise, is a legislative responsibility and should not be done under the guise of racial discrimination.  523 F.2d at 1300. (Gibson dissenting).

For the same reason, the EEOC's investigation here does not cover any unlawful employment practice under Title VII.  Analyzing the elements of a Title VII disparate impact claim confirms that conclusion.  Those elements are stated in *Allen v. Chicago*, 351 F.3d 306, 311-212 (7th Cir. 2003):

> To succeed on a disparate impact claim, plaintiffs bear the burden of showing that a particular employment practice causes a disparate impact on the basis of race.  Once this impact is shown, the defendant must demonstrate that the practice is "job related" and "consistent with business necessity." . . .  If the defendant makes the showing, plaintiffs still prevail by demonstrating that an alternative employment practice exists, and the defendant refuses to adopt it.

First, as to disparate impact, the EEOC concedes that it has no evidence either that there is a statistically significantly adverse impact in Defendant's employment practices or that any such impact is caused by Defendant's criminal background check.  *See* EEOC's Memorandum in Support of Application for Order to Show Cause, p. 6 ("the Commission has not yet determined whether a basis for a disparate impact claim exists . . . .").  Nevertheless, even assuming that an adverse impact did exist and that the adverse impact was caused by the background check policy, there still is not, as a matter of law, any matter under investigation that constitutes an unlawful employment practice cognizable under Title VII.

As a matter of Title VII law, Dollar General's criminal conviction policy is job related and consistent with business necessity.  42 U.S.C. § 2000e-2(k)(1)(A)(i).  The policy does "bear a demonstrable relationship to successful performance" of Dollar General's clerks.  *Bew v. Chicago*, 252 F.3d 891, 894 (7th Cir. 2001).

The Charging Party here was disqualified from employment with Dollar General as a Stocker/Cashier because she had a criminal conviction for illegal possession of a controlled substance as well as a felony conviction for probation violation.  The dangers posed by illegal drug use in the workplace are so well known that the federal government requires federal contractors to "provide a drug-free workplace."  41 U.S.C. § 701(a)(1).  Moreover, "criminal or dishonest conduct" is a "specific factor" that may be used to find a person unsuitable for federal employment (including employment at the Commission, presumably).  *See* 5 C.F.R. § 731.202(b)(2).

Both federal and state laws require employers to maintain safe work places. 29 U.S.C. § 654 (OSHA) *see also People v. Chicago Magnet Wire Co.*, 534 N.E. 2d 962 (Ill. 1989) (holding that the state's prosecution of employer for unsafe working conditions was not preempted by OSHA). Moreover, Dollar General and other retailers owe duties to maintain safe premises to its customers and visitors. *See Marshall v. Burger King Corp*, 856 N.E. 2d 1048 (Ill. 2006) (discussing duty of care that a business invitor owes to invitees.)[8] These legal duties and responsibilities by themselves demonstrate beyond dispute the job relatedness and business necessity of Dollar General's criminal background check procedure.

Relevant Title VII case law forecloses any attack on Dollar General's policy here. This Court, in *Williams*, held that the mere explanation of the defendant's criminal conviction policy was sufficient to explain business justification:

> It really requires nothing more than the statement of Carson Pirie's policy to explain its business justification. It is not this court's function – because it is not the function of Title VII – to decide (for example) whether this court would adopt the same policy on its own. What is plain is that as a matter of law the Carson Pirie policy *cannot* be labeled as "insubstantial" – it can certainly be viewed rationally by Carson Pirie as serving a legitimate business purpose of minimizing the perceived risk of employee dishonesty.

1992 WL 229849 at *2.

Similarly, this Court in *A. B. & S. Auto Service*, 962 F.Supp. at 1064, recognized that, in the context of an application for a loan, an "inquiry into an applicant's criminal record provides relevant information about an applicant's creditworthiness, particularly his judgment and character." Indeed, the plaintiff there admitted that ten year old and five year old charges for possession of a controlled substance "reflected negatively on his judgment and character." *Id.* at 1058, 1064.

As a result, this court held:

> Therefore, because an applicant's judgment and character may legitimately be considered in making commercial lending

---

[8] In addition, employers may be found liable for negligent hiring if they do not conduct a background check and someone is injured as a result. *See, Honeysett v. Williams*, 2003 WL 25676461 (N.D. Ohio July 3, 2003) (citing *Byrd v. Faber*, 565 N.E.2d 584, 590 (Ohio 1991)); *Cook v. Greyhound Lines, Inc*., 847 F.Supp. 725 (D.Minn 1994).

16

> decisions, South Shore Bank's practice of considering criminal
> history as it relates to character and judgment bears a legitimate
> and manifest relationship to the extension of credit.  Therefore,
> the court finds that the bank has successfully demonstrated that
> its practice of inquiring into a credit applicant's criminal record
> is legitimately related to the extension of credit.
>
> Plaintiffs have failed to make out a *prima facie* case of
> discrimination in violation of the ECOA under the disparate
> impact theory.  Despite the fact that plaintiffs have not made
> the *prima facie* case, defendant, on the other hand, has
> demonstrated that its practice has a manifest relationship to the
> extension of credit.

*Id*. at 1084.

This Court also rejected a Title VII disparate impact claim based on a criminal
conviction disqualification in *Black v. Safer Foundation*, 2003 WL 21823483 (N.D. Ill.
Aug. 6, 2003).  There, the plaintiff was convicted of bank robbery and was incarcerated
from 1965 to 2001.  *Id*. at *2.  His application for employment was rejected because the
defendant had a policy that it would not hire individuals within one year after their
release from incarceration.  *Id*. at *1.  This Court again held that, as a matter of law, the
policy was justified by business necessity.  There was no viable Title VII disparate
impact claim:

> Even if one assumes that the statistics produced by Black
> crossed the "threshold of reliability" that would allow them to
> establish a *prima facie* case, Safer showed that its employment
> practice bears a manifest relationship to the employment in
> question because Safer felt there was a need for ex-offenders to
> re-adjust to society for at least one year before they could
> effective help other ex-offenders re-integrate into society.

Other courts have reached the same result.  For example, in *El v. Southeastern
Pennsylvania Transportation Authority*, 479 F.3d 232 (3rd Cir. 2007), the Third Circuit
rejected a disparate impact claim arising from an employer's refusal to hire an applicant
with a forty year old conviction for second degree murder.  *Id*. At 235.  The reason for
the defendant's policy exclusion there was the risk of "endanger[ing] the employer's
patrons."  *Id*. at 244.

There, the court recognized the paucity of law supporting the plaintiff's claims.
The court noted that *Green* was the "only reported appellate level case to address

squarely the issue of exclusion from eligibility on the basis of prior convictions." *Id.* at 243. The *El* court also recognized that *Green* was distinguishable because the policy at issue in *Green* barred hiring a person with <u>any</u> criminal conviction, no matter how remote, insubstantial or unrelated to the job. *Id.* Instead, the *El* court was faced with a "narrower policy for a position in which criminal convictions are more job-related." *Id.*

The *El* court also discounted the EEOC's policy on criminal convictions, finding that the policy is not "entitled to great deference;" "does not speak" to relevant questions; and "does not substantively analyze the statute." *Id.* at 243-244.

There, the court also rejected the contention that each applicant's circumstances must be considered individually:

> *El* urges us to go further and hold that Title VII prohibits a bright-line policy with regard to criminal convictions; he argues, rather, that Title VII requires that each applicant's circumstances be considered individually without reference to any bright-line rules. We decline to go so far. If a bright-line policy can distinguish between individual applicants that do and do not pose an unacceptable level of risk, then such a policy is consistent with business necessity.

The *El* court also recognized that "raising questions about . . . care in formulating" a criminal conviction policy could not rebut a showing of business necessity:

> Title VII, however, does not measure care in formulating hiring policies; rather, it requires that an employer be able to show that its policy is consistent with business necessity when challenged. *Id.* at 248.

Thus, reviewing the record evidence, the court held that no "reasonable juror could find that Septa's policy is inconsistent with business necessity." *Id.* at 248.

<u>Indeed, the EEOC has already fought – and lost – this battle.</u> In *Carolina Freight*, the EEOC contended that the defendant's policy which "bars applicants from employment with a felony, theft, or a larceny conviction resulting in an active prison sentence" had a disparate impact upon Hispanics. 723 F. Supp. at 750. The policy precluded a person from employment for any such conviction during his lifetime and was

adopted pursuant to a consent decree with the United States Department of Justice.  *Id.* at 737-38.

The *Carolina Freight* court easily determined that the policy was justified by business necessity.  First, it "is exceedingly reasonable for an employer to rely upon an applicant's past criminal history in predicting trustworthiness."  *Id*. at 753.  Also, the "honesty of a prospective employee is certainly a valid consideration in the hiring decision."  *Id*.  In short, the defendant there "offered a business necessity for its conviction policy:  the need to minimize losses from employee theft."  *Id*. at 754.  Given these reasons, the court held that the employer could "refuse to hire persons convicted of a felony even though it has a disparate impact on minority members."  *Id*. at 753.

Finally, in *Richardson v. Hotel Corporation of America*, 332 F. Supp. 519 (E.D. La. 1971), <u>affirmed</u> 468 F.2d 951 (5th Cir. 1972), the plaintiff was terminated because he had been convicted of theft and of receiving stolen goods.  *Id.* at 520.  Plaintiff claimed that he was a victim of disparate impact discrimination in violation of Title VII.  The court rejected this claim, finding that the policy was justified by the business needs of the employer, *i.e.*, to protect property:

> The crucial issue therefore is whether the hotel's policy has been shown to be required by its business needs.  A past criminal record affords no basis to predict that a given person will commit a future crime.  But the evidence indicates that a group of persons who have been convicted of serious crimes will have a higher incidence of future criminal conduct than those who have never been convicted.  It is reasonable for management of a hotel to require that persons employed in positions where they have access to value property of others have a record reasonably free from convictions for serious property related crimes.

*Id.* at 521.

The final element of a proper Title VII disparate impact claim also demonstrates that there is no cognizable Title VII claim being investigated here.  No Title VII decision and no EEOC policy or regulation has ever identified even one legally-sufficient alternative selection device to criminal background checks that is both as effective as that selection device and has a lesser adverse impact.  Nor is there anything even remotely suggesting that Dollar General has refused to adopt any such device.  Thus, there can be no recognized Title VII disparate impact claim here.

In short, Title VII law plainly forecloses this investigation and attack. Title VII case law confirms that criminal background checks such as that employed by Dollar General are not unlawful under that statute. Title VII does not protect criminals. As a result, this investigation does not relate to any unfair employment practice covered by Title VII.

C.    The Evidence Sought is not Relevant to the Matter Under Investigation.

Even if a valid charge had been presented to the Court, and the EEOC had not exceeded the scope of its investigative authority, the subpoena still should not be enforced. There is no "realistic expectation" that the information sought is relevant to a proper Title VII charge or to the proper scope of an EEOC investigation. It is, instead, a fishing expedition in contravention of *United Airlines*. 287 F.3d at 653. For example, the temporal scope of the requested records – three and one-half years worth – far exceeds any reasonable period. As the Seventh Circuit noted in *A.E. Staley*, the dates of the alleged unlawful employment practice inform the court and the employer "what the proper scope of the investigation should be times-wise." *Id*. at 711 F.2d at 787, *quoting Dean Witter*, 643 F.2d at 1338. In this case, the charge gives only one day as the date of the alleged discrimination. The EEOC fails to demonstrate how three and one-half years (1,277 days) of records are relevant to that one day. Clearly, they are not.

Finally, the EEOC's request for information on all disqualifications throughout the nation is a prohibited fishing expedition.[9] Charging Party here was disqualified because of a conviction for felony possession of a controlled substance. She presents an individual charge, claiming that she also was discriminated against on one day only. There is no class-wide discrimination expressly or even implicitly alleged in the charge, nor is there an allegation of "pattern or practice" discrimination. 42 U.S.C. § 2000e – 6(a), (c). Information concerning other disqualifications, for example, whether murderers were disqualified, is irrelevant to a determination of the disqualification at issue here.

Neither the charge, nor anything advanced by the EEOC, raises even an inference that Dollar General's criminal background check has an adverse impact on African-

---

[9] While the Magistrate's narrowed version of the subpoena to Division 5, which encompasses eight states, is more reasonable than the EEOC's nationwide request, it is still not appropriate under the circumstances. This would involve the production of information regarding approximately 15,000 people per year, which is inappropriate given that Charging Party's claim is that she alone was discriminated against.

Americans.  The EEOC has not even suggested that there is no business justification for the policy, nor has it offered any argument that an alternative selection device is as effective as the criminal background check, but has lesser adverse impact on African-Americans.

In short, this subpoena is nothing more than a fishing expedition, and one of a massive scale.  The Court should deny enforcement of this subpoena on this ground.

D.    Respondent Should Not Be Ordered to Produce the Information on a Month by Month Basis.

Magistrate Judge Schenkier ordered Respondent to produce the information from Respondent's Division 5 "for each month" from January 1, 2004 through April 1, 2007. Notably, the EEOC's subpoena did not request that information to be broken down by month in this fashion.  Because the EEOC did not ask for this relief, either in the subpoena it drafted, or in its filings with this Court, it should not be granted this relief now.

## IV.  CONCLUSION

As shown above, there is no valid charge sufficient to support this subpoena enforcement action.  Therefore, since this jurisdictional prerequisite has not been made, this action should be dismissed.

Also, the investigation at issue here is not of a Title VII violation.  Thus, enforcement of the subpoena should be denied.


Respectfully Submitted,

By: s/Thomas L. Henderson
Thomas L. Henderson (TN Bar No. 11526)
Kristy L. Gunn (TN Bar No. 22821)
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
6410 Poplar Avenue, Ste. 300
Memphis, Tennessee 38119
Telephone: (901)767-6160
Email: Thomas.Henderson@ogletreedeakins.com
Email: Kristy.Gunn@ogletreedeakins.com

Michael D. Ray
OGLETREE, DEAKINS, NASH
SMOAK & STEWART
20 South Clark Street, 25th Floor
Chicago, IL  60603
Telephone:  312-558-1220
Fax:  312-807-3619
Email: michael.ray@odnss.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of February, 2008, a copy of the foregoing **Memorandum In Support of Respondent's Objections to the Recommended Grant of the EEOC's Application for Enforcement of Amended Subpoena** was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's electronic filing system.

Jeanne Szromba
Diane Smason
John Hendrickson
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
500 West Madison Street
Suite 2800
Chicago, Illinois 60661

AUSA
219 South Dearborn Street
Suite 500
Chicago, IL 60604


 _s/Thomas L. Henderson

22