**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) | |
| | ) | |
| **Applicant,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **1:07-cv-06672** |
| **DOLGENCORP,** | ) | |
| | ) | |
| **Respondent.** | ) | |

_____

**MEMOPRANDUM IN SUPPORT OF RESPONDENT'S EMERGENCY MOTION TO
STAY PENDING APPEAL**
_____

  The Equal Employment Opportunity Commission ("EEOC") instituted this action seeking enforcement of an administrative subpoena.  On February 12, 2008, Magistrate Judge Schenkier granted the EEOC's application to enforce the subpoena, as modified.  Subsequently, on April 15, 2008, the District Court adopted the Magistrate Judge's Report and Recommendation, with modifications, and ordered Dolgencorp to produce certain documents and information to the EEOC by April 30, 2008.  Respondent Dolgencorp plans to appeal.

  Pursuant to Fed. R. Civ. Pro. 62(c), Dolgencorp is entitled to stay of the District Court's order pending appeal because Dolgencorp is likely to succeed on the merits, Dolgencorp will be irreparably harmed if this matter is not stayed, the EEOC nor Charging Party will not suffer substantial injury if the matter is stayed, and the public interest lies in favor of a stay.  Thus, this Court should order this matter stayed, pending appeal.

## STANDARD OF REVIEW

  In determining whether or not to grant a stay pending appeal, the Court must consider "(1) the applicant's likelihood of succeeding on appeal; (2) whether the applicant will be irreparably harmed if a stay is not granted; (3) whether the issuance of a stay would cause substantial injury to other parties interested in the lawsuit; and (4) where the public interest lies."

*EEOC v. Quad/Graphics, Inc.*, 875 F.Supp. 558, 559 (E.D. Wis. 1995) (citing *Hilton v. Brauskill*, 481 U.S. 770, 776 (1987)).  "Failure to meet the likelihood of success factor may be excused where the applicant has made a particularly strong showing on the other three factors." *Id*.

## I.     DOLGENCORP IS LIKELY TO SUCCEED ON THE MERITS ON APPEAL.

Dollar General is likely to succeed on appeal because (1) a jurisdictional prerequisite to this action under the United States Supreme Court's decision in *EEOC v. Shell Oil* – the filing of a charge sufficient to support this enforcement action – has not been met; (2) the EEOC's inquiry exceeds its limited authority to investigate; and (3) the information sought by the subpoena is not relevant to the charge under investigation and is overbroad.

### A.     Facts

As this Court is aware, Dollar General's conditional offer of employment to Charging Party Regina Fields-Herring was revoked because her criminal background check revealed that she had convictions for felony possession of a controlled substance and a related probation revolcation.[1]  (Affidavit of Tammy Hammond-Loth ("Loth Aff.") at ¶ 7, 8, Ex. B.)[2]  Fields-Herring filed a charge alleging that her employment had been terminated because of her felony conviction, and that she believed <u>she</u> had been the victim of discrimination based on <u>her race,</u> African American, in violation of Title VII of the Civil Rights Act of 1964.  (Affidavit of Jennifer Gingery Cook ("Cook Aff.") at Ex. A(A).)[3]  She further stated that alleged discrimination against her occurred on <u>one</u> day:  September 23, 2004.  (Id.)

In connection with the investigation of this charge, Dollar General provided the EEOC with, *inter alia*, information demonstrating that (1) Dollar General revoked a conditional offer of

---

[1] Dollar General's policy is to conduct criminal background checks on persons to whom it has made a conditional offer of employment.  Not every criminal conviction disqualifies one from continued employment, and criminal convictions are not an absolute bar to continued employment at Dollar General.  Depending on the nature of the offense and the time of its disposition, some convictions are no bar at all to continued employment.  Some conditions preclude the individual from working for a specified period of time, and some felonies are permanent bars to employment at Dollar General.

[2] The redacted version of the Affidavit of Tammy Hammond-Loth has been filed as Docket Entry # 25.  The complete Affidavit has been filed under seal.  (*See* Docket Entry # 27.)

[3] The redacted version of the Affidavit of Jennifer Gingery Cook has been filed as Docket Entry # 22 and 23.  The complete Affidavit has been filed under seal.  (*See* Docket Entry # 27.)

employment it made to a similarly situated Caucasian based on the results of the criminal background check and (2) Dollar General hired and continued to employ a similarly situated African-American who successfully passed the background check.  (Cook Aff. at Ex. D.)

This Court ordered Dollar General to provide the EEOC with the number of employees, by title and race, who were offered conditional offers of employment between the dates of January 1, 2004 and April 1, 2007 and to provide the number of those employees, by race and title, who had their contingent offers of employment revoked as a result of a criminal background check.  (Docket Entry # 46.)  The Court limited this information to the division in which Charging Party applied to work.

> **B.     No Valid Charge of Discrimination Has Been Filed.  Thus, this Court Does Not Have Jurisdiction to Enforce the Subpoena at Issue.**

The existence of a valid charge of discrimination under Title VII "is a jurisdictional prerequisite to judicial enforcement of a subpoena issued by the EEOC."  *EEOC v. Shell Oil Co.*, 466 U.S. 54, 65 (1984).  "[T]he EEOC's investigative authority is tied to charges filed with the Commission; unlike other federal agencies that possess plenary authority to demand to see records relevant to matters within their jurisdiction, the EEOC is entitled to access only to evidence 'relevant to the charge under investigation.'"  *Id.* at 64 (emphasis added) (*quoting* 42 U.S.C. § 2000e-8(a)); 29 C.F.R. § 1601.12.  Therefore, to constitute a valid charge of discrimination for subpoena enforcement purposes, the Charge must comply with the provisions of 29 C.F.R. § 1601.12(a), which requires, *inter alia*, "[e]ach charge should contain . . . [a] clear and concise statement of the facts, including the pertinent dates, constituting the alleged unlawful employment practices."  *Shell Oil*, 466 U.S. at 68 (*quoting* 29 C.F.R. § 1601.12(a)(3)).  *Id.* at 68.  Moreover, 29 C.F.R. § 1601.15(b), which is incorporated in § 1610.12(a)(3) states:

> (b)  As part of the Commission's investigation, the Commission may require the person claiming to be aggrieved to provide a statement which includes:  (1) a statement of each specific harm that the person has suffered and the date on which each harm occurred; (2)  For each harm, a statement specifying the act, policy or practice which is alleged to be unlawful; (3) For each act, policy, or practice alleged to have harmed the person claiming to be aggrieved, a statement of the facts which lead the person claiming to be aggrieved to believe that the act, policy or practice is discriminatory.

Thus, based upon the statute and the EEOC's own regulations, the Supreme Court held that in order to constitute a valid charge, the charge "[s]hould identify the groups of persons that he has reason to believe have been discriminated against, the categories of employment positions from which they have been excluded, the methods by which the discrimination may have been effected, and the periods of time in which he suspects the discrimination to have been practiced." *Shell Oil*, 466 U.S. at 68. Furthermore, the *Shell Oil* Court found that a charge which merely alleged that an employer had violated Title VII is not a valid charge because "such a result would be inconsistent with the evident purpose of the regulation – to encourage Complainants to identify with as much precision as they can muster, the conduct complained of. And it would render nugatory the statutory limitation of the Commission's investigative authority to materials 'relevant' to a charge. *Id*. at 73.

Here, the charge does not identify what employment practice is at issue. Instead, Charging Party says only that she was "discriminated against. . . in violation of Title VII." There is no statement of facts on the face of the charge "constituting the alleged unlawful employment practice," as required by *Shell Oil* and § 1601.12(a)(3). The charge is devoid of facts constituting any alleged unlawful employment practice and never alleges that Dollar General's background check policy violates Title VII (or that it operated to discriminate in violation of Title VII.) Similarly, there is no statement specifying the act, policy, or practice that is alleged to be unlawful nor is there any statement of facts that lead the person claiming to be aggrieved that the act, policy or practice is discriminatory, as required by 29 C.F.R. § 1601.15(b).

Contrary to the requirements of *Shell Oil*, this charge does not identify the methods by which the alleged discrimination may have been effected. Indeed, this charge is the prototypical charge that alleges "merely" that "an employer has violated Title VII," which *Shell Oil* rejects. 466 U.S. at 73. It clearly does not "identify with as much precision as [the EEOC] can muster the conduct complained of." *Id.* at 73.

The charge here does, however, "render nugatory the statutory limitation of the Commission's investigative authority to materials 'relevant' to a charge." *Id*. For example, based on this "charge", the EEOC could attempt to investigate any race discrimination of any kind, from recruitment, hiring, terms and conditions of employment, wages, promotions, demotions, performance reviews, harassment, termination, *etc*. because the "charge" does not even identify the alleged unlawful act complained of. If this charge is valid, the EEOC could

investigate any theory of liability under any of these claims.  Just as importantly, as the EEOC is attempting to do here, the Commission could investigate all of these issues, under any theory, for any period of time at any location it chooses.  Certainly, the Congressional limitation on the EEOC's authority is thwarted by this supposed charge.

Thus, because this charge does not constitute a valid charge of discrimination for subpoena enforcement purposes, this action should be dismissed.

### C.     The Information Ordered to Be Produced Exceeds the EEOC's Investigative Authority.

#### 1.     This Investigation is Not Within the Limited Investigative Authority Delegated to the EEOC, and the EEOC's Attempt to Conduct an Unconstrained Investigation Should be Rejected.

The EEOC's authority to investigate is not plenary and is limited to "the evaluation of the actual charges filed with the agency."  *EEOC v. United Airlines, Inc.*, 287 F.3d 643, 652 (7th Cir. 2002).  Indeed, the "charge requirement evidences 'Congress' desire to prevent the Commission from exercising unconstrained investigative authority.'"  *United Airlines*, 287 F.3d at 653 (*quoting Shell Oil*, 466 U.S. at 65).  Thus, a reviewing court must be satisfied that the EEOC's demand for information is not "too indefinite," and that it has not "been made for an illegitimate purpose."  *Shell Oil Co.*, 466 U.S. at 72 n. 26.  The Supreme Court "has also cautioned that the charge and relevance requirements should not be interpreted so broadly as to render the statutory language a 'nullity.'"  *United Airlines*, 287 F.3d at 653.  There must be a "realistic expectation" that something may be discovered.  *Id.*  This "requirement of relevance, like the charge requirement itself, is designed to cabin the EEOC's authority and prevent 'fishing expeditions.'"  *Id.* (*citing EEOC v. K-Mart Corp.*, 694 F.2d 1055, 1066 (10th Cir. 1982).

As evidenced above, no valid charge has been filed here.  Thus, Congress' desire that the EEOC's investigative authority be constrained is rendered "nugatory" in this case.  *Shell Oil*, 466 U.S. at 73.  Indeed, in this situation, there would be no constraint at all upon the EEOC's investigation.  The Charging Party's subjective belief that she has been discriminated against, without specifying any particular manner in which such discrimination took place, would allow the EEOC unfettered investigative authority over any and all employment practices, from recruitment to termination, to any term or condition of employment.

2.      The Use of Criminal Convictions Does Not Violate Title VII.  Therefore, This Inquiry is Not Within the EEOC's Jurisdiction.

The EEOC is entitled only to evidence "that relates to unlawful employment practices covered by" Title VII.  42 U.S.C. § 2000e-8(a).  From Dollar General's understanding of the defective charge at issue, it is apparently the EEOC's position that a refusal by a retailer to hire as store clerks criminals duly convicted of specified crimes by state and federal courts, within specified periods of time, violates Title VII.

Title VII, however, does not make convicted criminals a protected class, nor does it require employers to hire those who have engaged in criminal behavior.  *EEOC v. Carolina Freight Carriers Corp.*, 723 F. Supp. 734, 753 (S.D. Fla. 1989); *Williams v. Carson Pirie Scott*, 1992 WL 229849 (N.D. Ill.) at *1 ("it is obvious that an employment policy that bars the hiring of ex-felons – at least for a job as "collector," . . . does not violate Title VII").  In fact, the only federal court case to hold an employer liable under a Title VII disparate impact theory for an employer's use of criminal convictions for hiring purposes is *Green v. Missouri Pacific Railroad Co.*, 523 F.2d 1290 (8th Cir. 1975).  Not only is that case easily distinguishable from this case, but, with "all due respect to the members of the Eighth Circuit, their holding is ill founded." *Carolina Freight*, 723 F. Supp. at 752.

*Green* is distinguishable from the issue presented here because the policy at issue there was "an absolute policy of refusing consideration for employment to any person convicted of a crime other than a minor traffic offense."  *Green*, 523 F.2d at 1292.  (emphasis added).  In contrast, the policy at issue here applies only to people with certain types of convictions for specified periods of time, as the policy found lawful in *El v. Southeastern Pennsylvania Transportation Authority*, 479 F.3d 232, 243 (3rd Cir. 2007).  Indeed, no federal court has found a policy such as that utilized by Dollar General to violate Title VII's ban on disparate impact discrimination.  *See also A. B. & S. Auto Services, Inc. v. Southshore Bank of Chicago*, 962 F. Supp. 1056, 1063-64 (N.D. Ill. 1997) (cases concerning blanket exclusion of applicants with arrest records are inapplicable in a lending case.)  Moreover, the *Green* case is also flawed because there was no adverse impact in the selection of employees, *Lindeman & Grossman*, Employment Discrimination Law, 4th Ed. (BNA), Vol. 1 at page 137 n. 112, and because, though it is the pool of qualified applicants that must be analyzed in order to determine whether adverse impact exists, *Wards Cove Packing Co. v. Atonia*, 490 U.S. 642, 650 (1989), the *Green* Court did

not consider, at the liability stage, whether plaintiff was otherwise qualified for the position at issue and conducted no analysis of the qualifications of the other applicants. *Green*, 523 F.2d at 1298-99. Therefore, the disparate impact analysis made by the Eighth Circuit was erroneous.

    3.    <u>Case Law Interpreting the Viability of a Disparate Impact Claim – Including the EEOC's Own Case – Rejects the EEOC's Position Here</u>.

In short, there is no reasoned case law finding unlawful any criminal conviction policy such as that utilized by Dollar General. In *Green*, the petition for rehearing *en banc* was denied on a 4-3 vote. In dissent from that decision, Chief Judge Gibson aptly noted:

> In effect, the present case has judicially created a new Title VII protected class – persons with conviction records. This extension, if wise, is a legislative responsibility and should not be done under the guise of racial discrimination. 523 F.2d at 1300. (Gibson dissenting).

For the same reason, the EEOC's investigation here does not cover any unlawful employment practice under Title VII. Analyzing the elements of a Title VII disparate impact claim confirms that conclusion. Those elements are stated in *Allen v. Chicago*, 351 F.3d 306, 311-212 (7th Cir. 2003):

> To succeed on a disparate impact claim, plaintiffs bear the burden of showing that a particular employment practice causes a disparate impact on the basis of race. Once this impact is shown, the defendant must demonstrate that the practice is "job related" and "consistent with business necessity." . . . If the defendant makes the showing, plaintiffs still prevail by demonstrating that an alternative employment practice exists, and the defendant refuses to adopt it.

First, as to disparate impact, the EEOC concedes that it has <u>no</u> evidence <u>either</u> that there is a statistically significantly adverse impact in Defendant's employment practices <u>or</u> that any such impact is caused by Defendant's criminal background check. *See* EEOC's Memorandum in Support of Application for Order to Show Cause, p. 6 ("the Commission has not yet determined whether a basis for a disparate impact claim exists . . . ."). Nevertheless, even assuming that an adverse impact did exist and that the adverse impact was caused by the background check policy, there still is not, as a matter of law, any matter under investigation that constitutes an unlawful employment practice cognizable under Title VII.

As a matter of Title VII law, Dollar General's criminal conviction policy is job related and consistent with business necessity. 42 U.S.C. § 2000e-2(k)(1)(A)(i). The policy does "bear

a demonstrable relationship to successful performance" of Dollar General's clerks.  *Bew v. Chicago*, 252 F.3d 891, 894 (7th Cir. 2001).

The Charging Party here was disqualified from employment with Dollar General as a Stocker/Cashier because she had a criminal conviction for illegal possession of a controlled substance as well as a felony conviction for probation violation.  The dangers posed by illegal drug use in the workplace are so well known that the federal government requires federal contractors to "provide a drug-free workplace."  41 U.S.C. § 701(a)(1).  Moreover, "criminal or dishonest conduct" is a "specific factor" that may be used to find a person unsuitable for federal employment (including employment at the Commission, presumably).  *See* 5 C.F.R. § 731.202(b)(2).

Both federal and state laws require employers to maintain safe work places.  29 U.S.C. § 654 (OSHA) *see also People v. Chicago Magnet Wire Co.*, 534 N.E. 2d 962 (Ill. 1989) (holding that the state's prosecution of employer for unsafe working conditions was not preempted by OSHA).  Moreover, Dollar General and other retailers owe duties to maintain safe premises to its customers and visitors.  *See Marshall v. Burger King Corp*, 856 N.E. 2d 1048 (Ill. 2006) (discussing duty of care that a business invitor owes to invitees.)[4]  These legal duties and responsibilities by themselves demonstrate beyond dispute the job relatedness and business necessity of Dollar General's criminal background check procedure.

Relevant Title VII case law forecloses any attack on Dollar General's policy here.  This Court, in *Williams*, held that *the mere explanation of the defendant's criminal conviction policy was sufficient to explain business justification*.  *Williams*, 1992 WL 229849 at *2.  This Court has also held that, in the context of an application for a loan, an "inquiry into an applicant's criminal record provides relevant information about an applicant's creditworthiness, particularly his judgment and character.  *A. B. & S. Auto Services, Inc. v. Southshore Bank of Chicago*, 962 F. Supp. 1056, 1064 (N.D. Ill. 1997).  Under facts similar to those alleged here, this Court and others have determined that the use of criminal conviction records in hiring is justified by business necessity.  *Black v. Safer Foundation*, 2003 WL 21823483 (N.D. Ill. Aug. 6, 2003); *El v. Southeastern Pennsylvania Transportation Authority*, 479 F.3d 232 (3rd Cir. 2007) (holding that "no reasonable juror could find that [the criminal conviction policy at issue] is inconsistent

---

[4] In addition, employers may be found liable for negligent hiring if they do not conduct a background check and someone is injured as a result.  *See*, *Honeysett v. Williams*, 2003 WL 25676461 (N.D. Ohio July 3, 2003) (citing *Byrd v. Faber*, 565 N.E.2d 584, 590 (Ohio 1991)); *Cook v. Greyhound Lines, Inc*., 847 F.Supp. 725 (D.Minn 1994).

with business necessity); *Carolina Freight*, 723 F. Supp. 734, 750; *Richardson v. Hotel Corporation of America*, 332 F. Supp. 519 (E.D. La. 1971), *affirmed* 468 F.2d 951 (5th Cir. 1972).

The *El* case is particularly instructive. Not only did the *El* Court find the criminal conviction policy at issue consistent with business necessity, it also discounted the EEOC's policy on criminal convictions, finding that the policy is not "entitled to great deference;" "does not speak" to relevant questions; and "does not substantively analyze the statute." *El*, 479 F.3d 232, 24-44 (3rd Cir. 2007). The *El* Court also rejected the contention that each applicant's circumstances must be considered individually: "If [an employer's] bright-line [criminal conviction] policy can distinguish between individual applicants that do and do not pose an unacceptable level of risk, then such a policy is consistent with business necessity. *Id*. at 248. Finally, the Court in *El* recognized that "raising questions about . . . care in formulating" a criminal conviction policy could not rebut a showing of business necessity:

> Title VII, however, does not measure care in formulating hiring policies; rather, it requires that an employer be able to show that its policy is consistent with business necessity when challenged. *Id*. at 248.

Indeed, the EEOC has already fought – and lost – this battle. In *Carolina Freight*, the EEOC contended that the defendant's policy which "bars applicants from employment with a felony, theft, or a larceny conviction resulting in an active prison sentence" had a disparate impact upon Hispanics. *Carolina Freight*, 723 F. Supp. at 750. The policy precluded a person from employment for any such conviction during his lifetime and was adopted pursuant to a consent decree with the United States Department of Justice. *Id*. at 737-38.

The *Carolina Freight* court easily determined that the policy was justified by business necessity. First, it "is exceedingly reasonable for an employer to rely upon an applicant's past criminal history in predicting trustworthiness." *Id*. at 753. Also, the "honesty of a prospective employee is certainly a valid consideration in the hiring decision." *Id*. In short, the defendant there "offered a business necessity for its conviction policy: the need to minimize losses from employee theft." *Id*. at 754. Given these reasons, the court held that the employer could "refuse to hire persons convicted of a felony even though it has a disparate impact on minority members." *Id*. at 753.

The final element of a proper Title VII disparate impact claim also demonstrates that there is no cognizable Title VII claim being investigated here. No Title VII decision and no EEOC policy or regulation has ever identified even one legally-sufficient alternative selection device to criminal background checks that is both as effective as that selection device and has a lesser adverse impact. Nor is there anything even remotely suggesting that Dollar General has refused to adopt any such device. Thus, there can be no recognized Title VII disparate impact claim here.

In short, Title VII law plainly forecloses this investigation and attack. Title VII case law confirms that criminal background checks such as that employed by Dollar General are not unlawful under that statute. Title VII does not protect criminals. As a result, this investigation does not relate to any unfair employment practice covered by Title VII.

**D.     The Evidence Sought is not Relevant to the Matter Under Investigation.**

Even if a valid charge had been presented to the Court, and the EEOC had not exceeded the scope of its investigative authority, the subpoena still should not be enforced. There is no "realistic expectation" that the information sought is relevant to a proper Title VII charge or to the proper scope of an EEOC investigation. It is, instead, a fishing expedition in contravention of *United Airlines*, 287 F.3d at 653. For example, the temporal scope of the requested records – three and one-half years worth – far exceeds any reasonable period. As the Seventh Circuit noted in *A.E. Staley*, the dates of the alleged unlawful employment practice inform the court and the employer "what the proper scope of the investigation should be times-wise." *Id*. at 711 F.2d at 787, *quoting Dean Witter*, 643 F.2d at 1338. In this case, the charge gives only one day as the date of the alleged discrimination. The EEOC fails to demonstrate how three and one-half years (1,277 days) of records are relevant to that one day. Clearly, they are not.

Finally, the EEOC's request for information on all disqualifications throughout the nation is a prohibited fishing expedition.[5] Charging Party here was disqualified because of a conviction for felony possession of a controlled substance. She presents an individual charge, claiming that she was discriminated against on one day only. There is no class-wide discrimination expressly or even implicitly alleged in the charge, nor is there an allegation of "pattern or practice"

---

[5] While the narrowed version of the subpoena to Division 5, which encompasses eight states, is more reasonable than the EEOC's nationwide request, it is still not appropriate under the circumstances. This would involve the production of information regarding approximately 15,000 people per year, which is inappropriate given that Charging Party's claim is that she alone was discriminated against.

discrimination.  42 U.S.C. § 2000e – 6(a), (c).  Information concerning other disqualifications, for example, whether murderers were disqualified, is irrelevant to a determination of the disqualification at issue here.

Neither the charge, nor anything advanced by the EEOC, raises even an inference that Dollar General's criminal background check has an adverse impact on African-Americans.  The EEOC has not even suggested that there is no business justification for the policy, nor has it offered any argument that an alternative selection device is as effective as the criminal background check, but has lesser adverse impact on African-Americans.

As evidenced above, the EEOC has far exceeded its investigative authority in this matter, and Dolgencorp is likely to succeed on the merits of this case.

**II.     FAILURE TO STAY WILL CAUSE IRREPARABLE HARM TO RESPONDENT DOLGENCORP.**

Dollar General will suffer irreparable harm if the Court does not stay compliance with its Order until the Court of Appeals issues an order on appeal.  If Dolgencorp is required to provide the EEOC the information at issue, the EEOC will continue an unlawful investigation.  Dolgencorp should not be subjected to an investigation that the EEOC has no authorization to conduct.  In addition, if Dolgencorp is required to comply with the Court's order and produce the requested information, and an appeal will be merely academic.  *Quad/Graphics*, 875 F.Supp. at 560.  Even if the EEOC is subsequently ordered to return the information to Dolgencorp, the EEOC cannot "un-learn" what it already knows.  Thus, this factor weighs in Dolgencorp's favor.

**III.    ISSUANCE OF THE STAY WILL NOT CAUSE SUBSTANTIAL INJURY TO THE EEOC.**

The EEOC will not suffer any substantial injury if this Court stays the Court's order pending appeal.  Under identical circumstances a Court in this Circuit has held that "the only harm incurred will be a delay in the EEOC's receipt of the information that it has requested." *Quad/Graphics*, 875 F.Supp. at 560.  However, "*a delay will not result in substantial harm to other parties interested in this litigation.*"  *Id.*  Furthermore, entering a stay at this juncture will conserve the resources of the Parties because it will allow the Court of Appeals to decide the ultimate issue, rather than having the Parties spend resources on a matter the Court of Appeals may find to be outside the scope of the EEOC's investigative authority.

## IV.     THE PUBLIC INTEREST LIES IN FAVOR OF DOLGENCORP.

The public interest weighs in Dolgencorp's favor.  As evidenced by the *Shell Oil* case, Title VII, and the EEOC's own regulations, the public has an interest in an administrative agency, such as the EEOC, not exceeding its investigative authority.  Moreover, the public certainly has in interest in providing litigants with a meaningful appeal.  Additionally, "a stay would not thwart the government's interest in the elimination of discrimination; rather it would merely delay the government's investigation into suspected discrimination in this case." *Quad/Graphics*, 875 F.Supp. at 560.

## <u>CONCLUSION</u>

As shown above, the factors weigh in favor of staying this Court's order pending appeal.


Respectfully Submitted,

By: <u>s/Thomas L. Henderson</u>
Thomas L. Henderson (TN Bar No. 11526)
Kristy L. Gunn (TN Bar No. 22821)
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
6410 Poplar Avenue, Ste. 300
Memphis, Tennessee 38119
Telephone: (901)767-6160
Email: Thomas.Henderson@ogletreedeakins.com
Email: Kristy.Gunn@ogletreedeakins.com


Michael D. Ray
OGLETREE, DEAKINS, NASH
SMOAK & STEWART
20 South Clark Street, 25th Floor
Chicago, IL  60603
Telephone:  312-558-1220
Fax:  312-807-3619
Email: michael.ray@odnss.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 28th day of April, 2008, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's electronic filing system.

Jeanne Szromba
Diane Smason
John Hendrickson
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
500 West Madison Street
Suite 2800
Chicago, Illinois 60661

AUSA
219 South Dearborn Street
Suite 500
Chicago, IL 60604


 s/Thomas L. Henderson